## UNION NATIONAL BANK *v.* RICH.

| 106 | 319 |
|---|---|
| s 116 | 415 |

| 106 | 319 |
|---|---|
| s116 | 414 |
| s123 | 592 |

| 106 | 319 |
|---|---|
| 125 | 319 |

| 106 | 319 |
|---|---|
| s64NW | 339 |
| 129 | ²353 |

| 106 | 319 |
|---|---|
| 135 | 587 |

1. TRUST MORTGAGE—BENEFICIARIES—INDEMNITY TO SURETY.

   A trust mortgage recited that the mortgagor, being indebted to certain persons therein named upon promissory notes, some of which were indorsed by R., "and to R." upon certain notes made by the mortgagor to U. and P., "indorsed by R., and upon which he is liable as indorser," executed the mortgage "for the purpose of securing payment of said debts, and securing R. against his liability upon said indorsements," and authorized the trustee, upon default in the payment of said indebtedness, or if R. should be obliged to pay the notes upon which he was liable, to foreclose and sell the property, retaining from the proceeds of such sale "sufficient to pay said debts and indorsed notes." *Held,* upon a bill filed by U. to enforce an alleged interest in the security, that, so far as its debt was concerned, the mortgage constituted a mere personal indemnity to R., and that complainant was not a beneficiary thereunder.

2. PRINCIPAL AND SURETY—INDEMNIFYING MORTGAGE—SUBROGATION.

   Where a debtor executes a mortgage to indemnify his surety, the principal creditor at once becomes subrogated to all of the rights of the surety therein, even though it be given after

the original obligation has been incurred, and without previous agreement therefor; and the creditor may enforce such right in equity without first exhausting his remedies at law or reducing his debt to judgment. Such a case is distinguishable from one where the security is given by a stranger to the transaction, under which circumstances it has been held that the right of subrogation will not arise.

Appeal from Wayne; Lillibridge, J. Submitted May 3, 1895. Decided September 26, 1895.

Bill by the Union National Bank of Detroit against Charles A. Rich, trustee, and others, to compel the application of certain of the proceeds of a trust mortgage to the payment of a note held by complainant, and for other relief in connection therewith. Complainant appeals from a decree dismissing its bill. Reversed.

*Sloman, Groesbeck & Robinson (H. A. Harmon, of counsel),* for complainant:

In support of the contention that complainant was a beneficiary under the terms of the mortgage, or was at least entitled to be subrogated to the rights of the surety therein, counsel cited: *McMullen* v. *Neal,* 60 Ala. 552; *Ijames* v. *Gaither,* 93 N. C. 358; *Morrill* v. *Morrill,* 53 Vt. 74; *Cooper* v. *Middleton,* 94 N. C. 94; *In re Fickett,* 72 Me. 266; *Smith* v. *Gillam,* 80 Ala. 299; *Durham* v. *Craig,* 79 Ind. 117; *Loehr* v. *Colborn,* 92 Ind. 24; *Rice's Appeal,* 79 Pa. St. 168; *Thornton* v. *Bank,* 71 Mo. 221; *Barton* v. *Croydon,* 63 N. H. 417; *Richards* v. *Yoder,* 10 Neb. 429; *Seibert* v. *True,* 8 Kan. 63; *Kinsey* v. *McDearmon,* 5 Coldw. 392; *Eastman* v. *Foster,* 8 Metc. 23; *Rice* v. *Dewey,* 13 Gray, 47; *Boyd* v. *Parker,* 43 Md. 182; *Curtis* v. *Tyler,* 9 Paige, 435; *Bank of Auburn* v. *Throop,* 18 Johns. 505; *Vail* v. *Foster,* 4 N. Y. 312; *Maure* v. *Harrison,* 1 Eq. Ca. Abr. 93.

*A. G. Pitts,* for defendants Augusta Rich, Oscar E. and Frank A. Rasch, and Pitts:

The principal creditor is not subrogated to a mortgage given to an indorser purely as a personal security to him, and not for the better protection of the debt. Jones,

Mortg. (4th Ed.) § 883*a*; *Homer* **v.** *Bank*, 7 Conn. 478; *Thrall* v. *Spencer*, 16 Conn. 139; *Macklin* v. *Bank*, 83 Ky. 314; *Taylor* v. *Bank*, 87 Ky. 398; *Leggett* v. *Mc-Clelland*, 39 Ohio St. 624; *Osborn* v. *Noble*, 46 Miss. 449. In any event, he cannot claim the security by subrogation until the surety's liability to him has become absolutely fixed by judgment, and his insolvency established. Jones, Mortg. (4th Ed.) §§ 387, 883*a*; *Trust Co.* v. *Reeder*, 18 Ohio, 35; *Grant* v. *Ludlow*, 8 Ohio St. 1, 20; *Bank* v. *Douglass*, 2 Head, 699; *Homer* v. *Bank*, 7 Conn. 478; *Jones* v. *Bank*, 29 Conn. 25; *Hampton* v. *Phipps*, 108 U. S. 260; *Seward* v. *Huntington*, 94 N. Y. 104. And the surety may discharge the mortgage before the rights of third parties have intervened. Jones, Mortg. (4th Ed.) § 386; *Post* v. *Bank*, 28 Conn. 429; *Jones* v. *Bank*, 29 Conn. 25; *Transportation Co.* v. *Bank*, 46 Conn. 569; *Rankin* v. *Wilsey*, 17 Iowa, 463; *Waller* v. *Oglesby*, 85 Tenn. 321; *Hopewell* v. *Bank*, 10 Leigh, 206; *Logan* v. *Mitchell*, 67 Mo. 524.

*Wells, Angell, Boynton & McMillan* and *Corliss, Andrus & Leete*, for remaining defendants.

LONG, J. The complainant filed its bill in the Wayne circuit court in chancery, charging, among other things, that Oscar E. Rasch & Co., a special partnership, composed of August Rasch and Oscar E. Rasch, father and son, were wholesale, retail, and manufacturing furriers in Detroit; that on May 12, 1894, the said firm and defendant August Rasch were indebted to the complainant on a note of $8,000, dated February 7, 1894, payable in 90 days; that it was a firm note, indorsed by August Rasch before delivery; that, among other things, for the purpose of providing for the payment of this note and other indebtedness therein named at maturity, and to save the defendant August Rasch harmless thereon, Oscar E. Rasch & Co., on May 13, 1894, executed and delivered to the defendant Charles A. Rich, the father-in-law of Oscar E. Rasch, a chattel mortgage, in trust for certain beneficiaries therein referred to, including complainant, which mortgage was filed on the day it was given, and

covered all the firm's assets, including book accounts; that at the time the mortgage was given the firm of Rasch & Co. was insolvent; that the claims of Augusta Rich (who is Oscar E. Rasch's mother-in-law, and wife of Charles A. Rich) and others of the beneficiaries are fraudulent; that the stock of goods covered by the mortgage, at the time the same was given, amounted in value to upwards of $30,000, and was in good and salable condition, and the book accounts amounted to $5,000 and upwards.

That on June 2d, after complainant's note had matured, and default had been made in its payment, complainant notified defendant Rich, trustee in said mortgage named, that it was a beneficiary under said mortgage on account of said note, that the same had not been paid, and that it was entitled to its *pro rata* share of moneys realized under said mortgage; that it deemed itself insecure; and requested said Rich to take possession of the property, and cause the same to be sold, and to give the widest publicity to the sale, so that the highest price could be realized, and that complainant desired to be notified of the time and place thereof, so that it might be represented at the sale; that, pending the notice of sale, an inventory of the property should be taken, and that said trustee should ascertain what moneys had been taken in by the firm since the mortgage was given, and while they were left in possession; and warned him not to pay to the defendant August Rasch any portion of the proceeds which complainant would be entitled to on account of said note.

That Rich informed complainant that he was aware that it was a beneficiary, and was entitled to its share of the proceeds realized by him upon the property mortgaged, and that he would see that it was paid to the complainant as soon as he realized the same; that he would give complainant information as to the amount of stock and book accounts, and also furnish it with a list of the receipts and disbursements while the mortgagors were

in possession, and, in case of sale, would notify it so that it might be represented thereat, and have an opportunity to protect its interests.

That thereafter Rich, acting in concert and in fraudulent conspiracy with the mortgagors, and his wife, who was a beneficiary to the amount of $10,000, and other persons, for the purpose of preventing complainant from sharing in the proceeds of the mortgaged property, and in violation of his duty as a trustee, and being himself insolvent, did not furnish complainant with the information he had promised, nor advise it of the time and place of sale, and did not give it any information relative to the property covered by the mortgage, its amount and character, but purposely withheld information regarding the same from complainant, and on June 13, 1894, permitted Rasch & Co. to sell to the defendants Walter Buhl & Co., at private sale, their entire stock in trade covered by the mortgage, which then, at a fair market value, amounted to about $30,000, for the sum of $10,000; that the sale was not made subject to the mortgage thereon, but that said trustee, Rich, joined with Rasch & Co. in a bill of sale to Buhl & Co. thereof, and released and discharged the trust mortgage therefrom; that, instead of selling the goods to Buhl & Co. for cash, the trustee, Rich, took their notes, and, conniving with the defendants August, Oscar E., and Frank A. Rasch, Augusta Rich, and his adviser, Alvah G. Pitts, delivered the said notes to his wife, Augusta Rich, upon her pretended claim, for the purpose of securing to the defendant August Rasch the benefits thereof; that Walter Buhl & Co. were not *bona fide* purchasers; that they had notice of complainant's claim under the mortgage, and that Rich, trustee, had no authority to release the same; that in equity they hold the same for the benefit of complainant, and subject to its mortgage interest; that the defendant August Rasch has not paid complainant's note, and does not intend to do so, and has refused, upon complainant's request, to direct the trustee to pay it its share of the

proceeds realized upon the property covered by the mortgage; that the trustee has in his possession a large number of book accounts and other property of Rasch & Co., of the value of upwards of $5,000, which were covered by the mortgage, and which, unless restrained, he will permit Oscar and August Rasch to collect and appropriate the proceeds.

The bill asks for an injunction to restrain Trustee Rich from paying or turning over to the mortgagors any property in his possession; the defendants August and Oscar Rasch from obtaining or seeking to obtain any proceeds of any sales made by the trustee, and taking or obtaining possession of any of the property covered by said mortgage, and from collecting any of the book accounts, and from removing or secreting the books and said accounts; the defendants Buhl & Co. from paying the notes given by them; and the defendant Augusta Rich from transferring the notes received by her. The bill then asks for a receiver in the place of the defendant Rich; that the sale made to Buhl & Co. be declared invalid, or, if valid, only to the extent of the equity of Rasch & Co. therein, and that such sale be subject to the trust chattel mortgage, and that, in any event, it should be subject to the lien of complainant; that Buhl & Co. be decreed to have had notice of complainant's interest and of the trustee's want of power, and of the collusive purposes of the defendant Rich and the other defendants; that the property in the possession of Buhl & Co. be decreed to be held in trust for complainant and other beneficiaries; that Buhl & Co. be required to pay the complainant's portion of the value of the property as the court may decree it; that the several defendants come to an accounting touching the sale, disposition, and receipt of the property covered by the mortgage; that the claims of Augusta Rich, Frank A. Rasch, and Alvah G. Pitts (who it is claimed is the adviser of the defendants Rasch and Rich) be declared to be fraudulent, and that complainant's

claim have priority. The bill also contains a general prayer for relief. All the beneficiaries, including the mortgagors and others interested, are made parties defendant.

The defendants all answered, and denied all the material allegations of the bill; but it is unnecessary to set out their answers here, as the court below, on the hearing, treated the case as on general demurrer, and dismissed the complainant's bill.

Only two questions are raised: (1) Whether the complainant, by the terms of the chattel mortgage, was a beneficiary thereunder; (2) whether complainant, as holder of the note upon which August Rasch had obligated himself as accommodation maker or surety, was, under the facts set up in the bill and the terms of the mortgage, in equity entitled to be subrogated to his rights, and protected under the trust mortgage.

The mortgage, which is set up in the bill, is as follows:

"Know all men by these presents that we, Oscar E. Rasch & Co., a special partnership composed of Oscar E. Rasch, general partner, and August Rasch, special partner, of the city of Detroit, Wayne county, Mich., parties of the first part, being justly indebted unto the following described persons upon obligations hereinafter set forth, that is to say: To Mrs. Augusta Rich, upon a note made payable to her by Oscar E. Rasch & Co., dated January 31, 1894, payable upon demand, upon which is now due about $364.75, and to the same upon a promissory note for $9,000, dated November 28, 1892, payable upon demand, upon which is now due the said sum of $9,000, with interest; and to the Mechanics' Bank of Detroit, upon a note made by said Oscar E. Rasch & Co., and indorsed by August Rasch, dated April 26, 1894, payable 30 days after date, $1,000, and upon which is now due all of said sum; and to the American Exchange National Bank of Detroit $500 upon a promissory note for that amount made by Oscar E. Rasch & Co. to said bank, indorsed by August Rasch, dated April 23, 1894, payable 30 days after date; and to August Rasch upon a promissory note for $8,000, made by Oscar E. Rasch & Co. to

the Union National Bank of Detroit, indorsed by said August Rasch, and upon which he is liable as indorser, which note is dated February 7, 1894, payable 90 days after date, and upon which there is now due the said sum of $8,000, with accrued interest; and to said August Rasch upon a promissory note for $8,000, made by Oscar E. Rasch & Co. to the Peninsular Savings Bank of Detroit, indorsed by said August Rasch, upon which he is liable as indorser, which note is dated March 15, 1894, payable two months after date, and upon which there is now due the said sum of $8,000, with accrued interest; and to A. G. Pitts and F. A. Rasch for legal services, $500; —have, for the purpose of securing payment of said debts, and securing said August Rasch against his liability upon said indorsements, and for the purpose of securing the payment of the interest upon same, granted, bargained, sold, and mortgaged, and by these presents do grant, bargain, sell, and mortgage, unto Charles A. Rich, of the city of Detroit, as trustee for the above-named creditors and sureties, the following described goods, chattels, and personal property, to wit: All and every the stock and fixtures of the said special partnership heretofore and now employed in their business at No. 160 Woodward avenue, in the said city of Detroit, as wholesale, retail, and manufacturing furriers, including all the merchandise and stock manufactured, unmanufactured, and in process of manufacture, of skins, furs, etc., all the tools and implements of said business, all bills and accounts receivable and books of account, one bay horse, one harness, one delivery wagon, and all supplies and materials, including all property of the sorts described which may hereafter be acquired in the course of trade, all moneys due or owing, or which may hereafter become due or owing, to said special partnership, the leasehold interest of the said special partnership in said store No. 160 Woodward avenue, and all other personal property of said special partnership, wherever located. Said mortgagors to be privileged to continue in possession of said property, and to deal with it in the ordinary course of trade, buying and selling as the ordinary course of trade may make necessary, but not otherwise. Which said above-described goods at this date are free and clear from all liens, incumbrances, and levies, except the legal exemptions of the general partner, which are

expressly excepted from the operation of this mortgage. To have and to hold the same unto the use of the above-named beneficiaries forever.

"*Provided* always, and these presents are upon the express condition, that if the said Oscar E. Rasch & Co. shall pay or cause to be paid to said beneficiaries the said indebtedness hereby secured, and shall save harmless said August Rasch upon his said indorsements, when said indebtedness shall fall due, then this mortgage shall be void, and of no effect. But, if default be made in the payment of any of said indebtedness when same shall become due in accordance with the terms and conditions of the several notes above set forth, or if the said August Rasch shall be obliged to, or shall, pay or provide for the payment of either or all of said notes upon which he is indorser as aforesaid, the said trustee is hereby authorized to and shall take possession of the above-described property, and shall sell the same either at public or private sale,—if at public sale, after like notice as required by law for constable's sales,—either in bulk or in parcels, either the whole thereof or so much as may be necessary to satisfy the debts and indorsements hereby secured; and out of the proceeds of such sale he shall retain sufficient to pay said debts and indorsed notes, together with his reasonable expenses, and any and all interest that may then be due; the overplus, if any, to belong and be returned to said Oscar E. Rasch & Co. And said trustee is hereby authorized at any time when he shall deem said indebtedness hereby included, or any part thereof, insecure, or if the said Oscar E. Rasch & Co. shall assign or dispose of, except as above, or remove or attempt to remove, the whole or any part thereof, except in accordance with the terms heretofore in this instrument contained, without the written assent of said trustee, from the city of Detroit, aforesaid, then and from thenceforth it shall and may be lawful for said trustee, his successors or assigns, or his or their authorized agents, to enter upon the premises of said Oscar E. Rasch & Co., or any place or places where said goods and chattels, or any part thereof, may be, and take possession thereof, and same retain in some convenient place, at the risk and expense of said Oscar E. Rasch & Co., until said sums of money, or any of them, shall become due as aforesaid, and then to dispose of the same in the manner above specified.

"In witness whereof said Oscar E. Rasch & Co. have caused these presents to be executed in duplicate by the hand and seal of Oscar E. Rasch, general partner, the 13th day of May, in the year of our Lord 1894.

(Signed)                                    "OSCAR E. RASCH & Co.,

                                                 "By OSCAR E. RASCH."

1. Upon the first point, it is contended by counsel for complainant that the mortgage was given for a double purpose, to wit, to save August Rasch harmless from liability upon his note, and to pay the same out of the proceeds of the sale. On the other hand, the defendants claim that this security to August Rasch is a mere personal indemnity to him, as it clearly appears that it was not the intent of the mortgagors to create by this security a fund out of which to pay the note; that the purpose of the mortgage is stated to be the securing of the payment of the other class of debts, and also the securing of August Rasch against his said liability; that, looking to the condition of the mortgage, the same distinction is made between the two classes of claims secured,—that is, if Oscar E. Rasch & Co. shall make default in the payment of any of the indebtedness of the first class, then the trustee shall foreclose, or, if August Rasch shall be obliged to pay the note upon which he is liable, then the trustee shall foreclose and sell to indemnify him. From an examination of the mortgage, we are satisfied that the defendants' contention is correct, and we need not discuss that question further.

2. The important question arises under the second point made by counsel for complainant. The doctrine is well settled that an indorser of a note or the surety of a debt, upon being compelled to pay it, is entitled to the benefit of any security which the principal creditor holds, —as, for instance, a mortgage given by the principal debtor to the holder of the note or debt to secure it,—and without any assignment of it he is by force of law subrogated to the benefit of it. *McLean* v. *Towle*, 3 Sandf. Ch. 117; *Dick* v. *Moon*, 26 Minn. 309. The general rule is

also that the principal creditor is subrogated to the bene-
fit of any mortgage which the debtor has given to a
surety.   In *Demott* v. *Manufacturing Co.*, 32 N. J. Eq. 124,
the two banks had loaned money to the defendant com-
pany on notes indorsed by its directors.   The directors
had security by mortgage from the defendant company,
and it was held that the banks were entitled to be sub-
rogated to the rights of the directors under the mortgage.
The general rule was there laid down, as stated in 2
Brandt, Sur. (2d Ed.) § 324, that, as a general rule, where
a surety, or a person standing in the situation of a
surety, for the payment of a debt, receives security for his
indemnity and to discharge such indebtedness, the prin-
cipal creditor is in equity entitled to the full benefit of
that security, and it makes no difference that such prin-
cipal creditor did not act upon the credit of such security
in the first instance; and the right of the creditor is the
same when the security is a mortgage or other lien given
to the surety by the principal after the principal and
surety have become bound, even though there may have
been no previous agreement that indemnity should be
given; and, to entitle the creditor to enforce this right
in equity, it is not necessary that he should have
exhausted his remedies at law, or have reduced his debt
to judgment.   The same rule is laid down in Jones,
Mortg. (4th Ed.) § 883a, and the cases are there collected
sustaining the rule.   This rule, of course, only applies
when the security is given by the principal debtor, as in
the present case, for where property is pledged by a
stranger to indemnify a surety, and not with intention
that it shall be applied to the payment of the debt in
order to relieve the surety, it cannot be subjected by the
creditor, nor can the surety subject the property until he
has sustained loss, or is in such a condition as that loss
must be necessarily sustained.   *Macklin* v. *Bank*, 83 Ky.
314.   Counsel for defendants seems to have relied upon
this class of cases under his contention that the complain-

ant in the present case would not be subrogated. But we think the rule well settled that, where the principal debtor gives the security to the surety, the creditor is at once subrogated to all rights secured thereby; and under this rule, to entitle the creditor to enforce this right in equity, it is not necessary that he should have exhausted his remedies at law, or have reduced his debt to judgment.

We think, under the facts stated in the bill, that the complainant would be subrogated to the rights of August Rasch under the mortgage. Whether Walter Buhl & Co. were good-faith purchasers under the sale made to them by the trustee need not now be determined. And neither is it necessary to determine now whether the trustee had the right to discharge the mortgage. The court below treated the case as upon demurrer to the bill, and it is so treated here. The answers are not now considered, but we have treated the facts stated in the bill as true, and under the facts there stated we determine that the complainant would be entitled to subrogation to all the rights of August Rasch under the mortgage.

The decree below must be reversed, and the cause remanded for further proceedings under the answers. Complainant will recover costs of this court.

The other Justices concurred.