## D. A. TOMPKINS CO. v. CATAWBA MILLS et al.

(Circuit Court, D. South Carolina. October 25, 1897.)

1. CREDITOR'S SUIT—JURISDICTIONAL REQUIREMENTS.

In all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be—First, an acknowledged debt, or one established by a judgment rendered; and, secondly, an interest of the creditor in the property, or a lien thereon created by contract, or by some distinct legal proceeding, and giving a right to have it appropriated to pay the debt.

2. SAME.

This principle applies although the bill is filed on behalf of complainant and all other creditors, and although the debtor is an insolvent corporation.

3. SAME—STATE STATUTES—FEDERAL COURTS.

It also applies in the federal courts, although, by the statutes of the state where the suit is brought, these requirements are not essential to jurisdiction in equity.

4. SAME—ACKNOWLEDGMENT OF DEBT.

In a creditor's action based on certain promissory notes of the defendant corporation, not reduced to judgment, the answer admitted liability upon one of the notes. Held, that this fulfilled the first of the foregoing requisites of equitable jurisdiction.

5. SAME—LIEN BY SUBROGATION.

The bill alleged that defendant had given to trustees a mortgage upon its property as security in connection with its debts, including the notes held by complainant. Held, that, even assuming that the mortgage was given to protect the indorsers on the notes, personally, complainant was entitled to be subrogated to all their rights, and thereby acquired such an interest in the property as to fulfill the second of the foregoing requisites of equitable jurisdiction.

6. SAME—SUIT BY CESTUI QUE TRUST.

By the terms of the mortgage, the sole duty of the trustees was to hold the property until defeasance; and no power over it, and no right or duty to foreclose, was given. The bill did not pray for foreclosure, but alleged insolvency, and prayed for an accounting, and that all other creditors be brought in, and for an injunction and receivership, and sale of all the property and franchises, and marshaling and distribution of assets. Held, that the principle that a cestui que trust, suing in his own name, must give a satisfactory reason for not using the name of the trustee, did not apply.

7. SAME—PARTIES.

Held, further, that, while all the creditors must be called in, the frame of the bill dispensed with them as formal parties to the record.

8. SAME—RECEIVERS.

The insolvency of the corporation was denied, but the allegation was not denied that in the board of directors and the administration there was a deep-seated division, which could not be healed. Held, that this rendered a receivership imperatively necessary.

H. B. Tompkins and Wilson & Wilson, for complainant.
Wm. A. Barber, J. L. Glenn, and A. G. Brice, for defendants.

SIMONTON, Circuit Judge. The bill in this case is filed by the D. A. Tompkins Company, a corporation of the state of North Carolina. The defendants are the Catawba Cotton Mills, a corporation of the state of South Carolina, and George W. Gage, B. M. Spratt, and John C. McFadden, trustees of a mortgage executed by the corporation. The bill is a creditors' bill. It alleges that the complainant holds six promissory notes of the defendant corporation. Of these, five are indorsed by D. A. Tompkins and R. M. Miller, Jr., who are directors of

the Catawba Mills, and one for $5,000, dated 15th July, 1896, payable four months after date, is indorsed by D. A. Tompkins, R. M. Miller, Jr., Joseph Wylie, J. M. Smyly, S. B. Latham, and E. C. Stahn, all of whom are directors of the said Catawba Mills. The aggregate of the notes, on all of which protest was waived, is very nearly $20,000. The bill alleges that each of these notes was for cash loaned by complainant to the Catawba Mills, and each debt was contracted upon the express understanding and agreement that its payment was secured by a certain mortgage executed and delivered by the Catawba Mills to the other defendants, and the bill avers that the whole of the said debt and interest is so secured. This deed of trust in the nature of a mortgage is dated 25th June, 1896, and recorded within one month thereafter. It sets out certain resolutions adopted by the stockholders of the Catawba Mills at a meeting held 25th June, 1894. These resolutions recite that the Catawba Mills is indebted for moneys expended in the equipment and operation of the mills, that a large part of this debt is secured by indorsement or guaranty of private individuals, and that it is desirable to secure said indorsers or guarantors against all loss by reason of such indorsement. They also recite: The necessity for still other indorsements to equip and operate the mills. That, in order to secure all said indorsers and guarantors, "resolved, that the president and secretary be authorized to execute to George W. Gage, John C. McFadden, and B. M. Spratt, trustees, a first mortgage on the franchises, real estate, and manufacturing plant, and personal property of the company, near the corporate limits of the city of Chester, South Carolina, for $50,000; that the mortgage be so framed as to secure the debts already due by said company, on which its directors are liable as indorsers or guarantors, as well as such other debts which said company may hereafter contract with such indorsers or guarantors as it may secure thereto." In order to carry out this resolution, and for the purpose of saving harmless such indorsers or guarantors as the Catawba Mills may have heretofore secured or may hereafter secure on its paper for money borrowed or debts contracted to equip or operate the mills, the mortgage is then made. It conveys to these gentlemen above named, "as trustees for the purposes aforesaid," lands and plant of the Catawba Mills, describing these fully, as also its franchises and charter. The habendum is to them, as trustees for said purposes, and their successors and heirs, the survivor thereof, or such person or persons as may lawfully be substituted therefor. It closes with this defeasance clause: "If said company shall well and truly pay its said debts, so as to forever release and save harmless its said indorsers and guarantors therefrom, then," etc. The bill goes on to allege that the condition of this mortgage has been broken, not only in the fact that this debt to complainant is unpaid, but also from the further fact that the Catawba Mills owes other parties, secured under the same mortgage, to the full extent of $50,000, the limit of the mortgage indebtedness, and also a large number of unsecured creditors; that the Catawba Mills is insolvent, or in imminent danger of insolvency; that its plant has been lying idle since June, 1897; that it has no money or credit to go on; that there is serious conflict and want of harmony among its officers

and directors, and its property is deteriorating in value, and the danger of irreparable loss is very great. The prayer of the bill is as follows: "And that an account may be taken, by and under the direction of this honorable court, of what amount is due to your orator upon and by virtue of the said recited mortgage debts; that all other creditors of said Catawba Mills be called in, and required to prove their several claims in this cause;" then comes the prayer for injunction and the appointment of a receiver; and then, "That all the property and franchise of said Catawba Mills be sold under the order of this court, and the proceeds thereof applied, after payment of all costs and charges incident to these proceedings, to the discharge of all valid liens, according to their respective priorities, and then to payment of other creditors," with a prayer for general relief. Upon the presentation of this bill a temporary receiver was appointed, and the usual rule to show cause, with a restraining order, was issued. The cause comes up on the return. The trustees, in their return, submit that the bill states no cause of action within the jurisdiction of this court. It admits the allegations of the corporate character and citizenship of complainant, and the allegations of the bill of the making of the mortgage. Declares that they do not know whether complainant comes within the protection of the mortgage. They say that they have been, and are always, willing to enforce their trust for the benefit of the creditors, and to perform "all other duties imposed upon them by virtue of said trust." They say that no one has ever called upon them to enforce the deed. The Catawba Mills, in its corporate capacity, also files its return. It admits the execution of the note for $5,000, and the indorsement thereof by all the directors of the company, and avers that, if it has not been paid, it is due to the "machinations of D. A. Tompkins and R. M. Miller, Jr." It denies the validity of the other notes, and also denies that these other notes were secured by the mortgage. It attributes the misfortunes of the Catawba Mills to the arbitrary, secretive, and fraudulent manner in which the financial affairs of the mills were conducted by D. A. Tompkins and his coadjutors. Avers that D. A. Tompkins and R. M. Miller, Jr., control the complainant corporation. It denies that the Catawba Mills is insolvent, and charges that this bill is intended to postpone or defeat litigation now going on between this defendant corporation and one of its stockholders with D. A. Tompkins.

The grave question in this cause is as to the jurisdiction of this court. The objections to the jurisdiction are: (1) The complainant is an open creditor. Its claim is not yet reduced to judgment. Until this is done, it can have no standing in this court. (2) The bill seeks to foreclose a mortgage given to trustees, and held by them. It is not alleged that they have ever been called upon to enforce the mortgage. It is denied that any such application has been made, and this is, no doubt, the fact.

1. The general rule is that in the federal court a simple contract creditor, who has not reduced his claim to judgment, cannot come into equity to obtain the seizure of his debtor's property and its application to his claim. Cattle Co. v. Frank, 148 U. S. 604, 13 Sup. Ct. 691; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977. And this is true

notwithstanding that the complainant files his bill in behalf of himself and all other creditors, and notwithstanding the fact that the debtor is an insolvent corporation. Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127. The doctrine is put upon the ground that the claim is purely legal, involving a trial before a common-law jury (Cates v. Allen, supra), to which the defendant, under the constitution of the United States, has an unquestionable right. This is so even although' legislation of the state in which the suit was brought allows such an action to be brought. Such legislation cannot affect the jurisdiction of the federal court. New Orleans v. Louisiana Const. Co., 129 U. S. 45, 9 Sup. Ct. 223; Mississippi Mills v. Cohn. 150 U. S. 202, 14 Sup. Ct. 75; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712. In this last-named case we have the doctrine discussed and stated, with its limitations. In that case the complainant, holding an open account against his debtor, not reduced to judgment, which was denied by the debtor, filed his bill to set aside certain conveyances made by the debtor, on the ground that they were fraudulent and void. The debt set up was in no respect different from any other debt upon contract. It had to be investigated and adjudged before any remedy could be obtained on it. It was the subject of a legal action only, in which the defendant, under the constitution of the United States, was entitled to a jury in the federal court. The bill was dismissed, notwithstanding that in Mississippi, where the bill was filed, a state statute gave such a creditor a right to proceed before obtaining judgment at law. Mr. Justice Field, who acts as the organ of the court, enters into an elaborate examination of the cases, and states the conclusion thus:

"In all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered, accompanied by a right to the appropriation of the property of the debtor for its payment; or, to speak with greater accuracy, there must be, in addition to such acknowledged or established debt, an interest in the property, or a lien thereon, created by contract, or by some distinct legal proceeding." See, also, Talley v. Curtain, 8 U. S. App. 347, 4 C. C. A. 177, and 54 Fed. 43.

In the case at bar the return of the corporation defendant, while it denies the validity of five of the promissory notes held by complainant, admits the execution of the note dated 15th July, 1896, payable in four months from date, for $5,000, indorsed by all the directors; protest being waived. This fulfills one of the requisites set forth by Scott v. Neely. Has the complainant an interest in the property, or a lien thereon? This acknowledged debt comes within the class of debts protected by the trust deed executed by the Catawba Mills to the trustees, its co-defendants. Has the complainant an interest in the property mentioned in the trust deed, or a lien thereon, created by contract? The resolutions of the corporation desired this deed to be "so framed as to secure the debts already due by said company. upon which its directors are liable as indorsers or guarantors, as well as such other debts which the said company may hereafter contract with such indorsers or guarantors as it may secure thereto." This trust deed is dated 25th June, 1896. The note bears date 15th July, 1896. The property is held by these defendants as trustees for said

purposes. It would appear that the debts are secured, and so the indorsers are protected. But if a narrower construction be given to the deed, and it be held to protect the indorsers from liability, and that the trusts operate to protect them personally, still complainant has the right to be subrogated to their rights,—all their rights. It is an ancient and familiar doctrine in equity that a creditor shall have ·the benefit of any obligation or security given by the principal to the surety for the payment of the debt. Keller v. Ashford, 133 U. S. 622, 10 Sup. Ct. 494, and cases cited; Hampton v. Phipps, 108 U. S. 263, 2 Sup. Ct. 622. One of the cited cases (Maure v. Harrison, 1 Eq. Cas. Abr. 93) is among the earliest cases settling this principle. Curtis v. Tyler, 9 Paige, 432. The latest case on this subject is Bank v. Rich, 106 Mich. 319, 64 N. W. 339:

"A creditor is at once entitled to be subrogated to all rights secured to a surety by a mortgage executed by the principal debtor, without exhausting his remedies at law or reducing his debt to judgment."

It is clear that the complainant has rights in this property and under this trust. Thus, the other requisite for the jurisdiction exists.

2. The next objection is that this is a bill to foreclose a mortgage, and no reason is given for not bringing it in the name of the trustees. The deed of trust is peculiar in some respects. It puts all the property of the Catawba Mills in existence at its date in the hands of trustees, whose sole duty it is to hold it. They have no power whatever over it, expressed in the deed, and their trust is to hold it until defeasance occurs; that is to say, until the company pays all debts secured by the indorsement of anybody. None of the usual provisions appear which give the trustees the right to institute proceedings for foreclosure, or which make it their duty to do so on the request of creditors. And, if we assume that they could exercise that right if thereto requested, at whose request must they act,—of one creditor, or of a majority of the creditors, or of a smaller proportion? The most reasonable conclusion is that the purpose of this deed was simply to protect the property by a permanent lien, and by its aid to secure to the company the means, at all times in the future, of obtaining indorsers or guarantors for its paper. Under these circumstances, this case does not come within the class of cases in which the court will require a cestui que trust to explain with some satisfactory reason why he does not use the names of the trustees. Nor is this a bill for foreclosure. The bill does not confine the relief asked to the mortgage, or the property in the mortgage. It nowhere prays foreclosure; that is to say, a recognition of a right to redeem, fixing a time for redemption, and praying sale on failure, thus barring the equity. It is a creditors' bill seeking to marshal the assets of a corporation alleged to be insolvent, and praying a sale of all of its property, and the application of all of its assets to the payment of its debts after these shall have been marshaled. Had it been simply a bill to foreclose, the complainant could not get any other assets than those mentioned in the deed, towards paying his claims. Under this bill he gets these, and all subsequently acquired property, and all choses in action, of every character. It seems very clear that this court has jurisdic-

tion. It is true that all creditors must come in. The frame of the bill, however, as a creditors' bill, dispenses with them as formal parties to the record. Let them be called in at an early day. Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163. The insolvency of the corporation is denied. It is not denied that in the board of directors and in the administration there is a deep-seated division, not to be healed. This makes a receiver imperatively necessary. Let the rule be made absolute, and an order be prepared carrying out the conclusions reached in this opinion.