LINDSAY *v.* MORSE.

1. REPLEVIN — BOND — TITLE TO PROPERTY — PURSUING PROCEEDS OF SALE.

The giving of the statutory bond by a plaintiff in replevin does not operate to pass the title to the property to him, but the defendant, if in fact the owner, may retake it, or, if it has been sold, may pursue the fund realized, if it can be identified.

2. SAME—SUBROGATION TO RIGHTS OF SURETY.

Defendant in replevin, on obtaining judgment, may be subrogated to the rights of the sureties on plaintiff's bond in a fund given them as security by plaintiff.

3. SAME—PARTNERSHIP.

The fact that, while the undertaking of the sureties was individual, the fund so received by them went into their copartnership business, constitutes no obstacle to the pursuit of the fund.

Appeal from Wayne; Rohnert, J. Submitted December 12, 1901. Decided January 28, 1902.

Bill by Archibald G. Lindsay against George C. Morse, administrator of the estate of Patrick M. Gamble, deceased, for a partnership accounting: In the matter of the petition of William Ross and others for the payment of

their claim from the partnership assets. From a decree for petitioners, defendant (Morse) appeals. Affirmed.

*John D. Conely,* for petitioners.

*George W. Radford,* for defendant.

. MONTGOMERY, J. In 1890 one Henry Gamble commenced an action of replevin against the petitioners in this case, and, upon the seizure of certain lumber under his writ, gave the statutory bond, with Patrick M. Gamble, whose estate is defendant in this suit, and Archibald G. Lindsay, complainant in this suit, as sureties. The lumber was sold for between five and six thousand dollars, and the proceeds turned over to said sureties, who for some years previous to this time were partners in the lumber business. The proceeds were deposited in the bank to the credit of the firm, and through the misunderstanding of the bookkeeper, as he testifies, were credited to Henry Gamble in his open account with the firm. The bookkeeper testifies that at a later date Patrick M. Gamble told him that "the money was paid to Lindsay & Gamble in trust, and although Henry Gamble had an interest in it, or might have, some one else claimed an interest in it, and it might not belong to Henry Gamble, and it might have to be paid to some other party;" that the bookkeeper said that in that case he had better open up a separate account for it; and that Mr. Gamble replied, "Yes; do that." The entry correcting the bookkeeper's error and opening a new account, called, "Henry Gamble Replevin Account," was not made until some time later,—several months after Patrick M. Gamble's death. Mr. Lindsay's testimony as to the understanding under which the money was received is as follows:

" Mr. Patrick M. Gamble came to me and told me that Henry Gamble wanted me and Patrick to sign the replevin bond, and stated there was no risk, because we should receive the property, or the proceeds of the property, as security against any liability that we might incur. On

this fact I consented to sign the bonds with Patrick M. Gamble, and I received, not the lumber, but the proceeds of the lumber, in the sum of $5,000, or a little more. Lindsay & Gamble received it, but put it in their bank as security against any loss that might be sustained from the determination of the suit."

Patrick M. Gamble died in February, 1891. In March, 1892, Mr. Lindsay filed the original bill in this case, asking for an accounting and winding up of the partnership business. In December, 1895, petitioners obtained judgment against Henry Gamble in the action of replevin for upwards of $7,000, having waived judgment for the return of the lumber. Execution against Henry Gamble was returned unsatisfied, and petitioners sued Mr. Lindsay on the bond and obtained judgment. Upon learning of the fund deposited with Lindsay & Gamble, they filed this petition to have it applied upon their judgment. Petitioners have never taken steps to obtain judgment on the bond against the estate of Patrick M. Gamble. The firm of Lindsay & Gamble is solvent, but Patrick M. Gamble's estate is not.

It is claimed by counsel for the administrator that between the entry in November, 1890, and the second entry in August, 1891, "the money had been applied to the payment of Henry Gamble's paper, as far as it would go." We are unable to find any testimony in the record to this effect, except what implication may arise from his having been credited with the money upon the books of the firm; and, as to that, it does not appear that the entry was acceded to by either of the sureties. It is true that the firm of Lindsay & Gamble paid out moneys on account of Henry Gamble, and Henry Gamble became their debtor; but the payments were made upon obligations previously incurred, and it does not appear that it was their intention to devote this particular fund to that purpose.

It was decided in *Mannausau* v. *Wallace*, 87 Mich. 543 (49 N. W. 1082), that the mere institution of an action of replevin and the giving of the bond by the plaintiff does not operate to pass title to the plaintiff; that the defend-

ant may, notwithstanding, repossess himself of the property, if it is in fact his property. It would seem to follow that, where he is able to identify the fund realized upon a sale of such property, he would be entitled to pursue that fund. On the other hand, if we assume that, upon taking judgment, the defendants in replevin became creditors of the plaintiff in replevin, Lindsay and Gamble were sureties, and we can see no reason why, as to a fund in the hands of Lindsay & Gamble, received as a security for these sureties, the principal creditors may not be subrogated. In fact, we think the case of *Union Nat. Bank* v. *Rich*, 106 Mich. 328 (64 N. W. 339), is ample authority for such substitution. It should be noted that it is the theory of the appellant that the undertaking of Lindsay and Gamble upon this bond was not a copartnership undertaking at all, and this is apparently correct. The proceeds of this lumber were paid to them, not for the purpose of liquidating a liability to the partnership, but as security. Evidently for convenience, the fund was deposited in the firm account of Lindsay & Gamble. The assets of the firm were increased by that amount. The firm is solvent. There is no equity in permitting this fund, now in the hands of the receiver, to be diverted to the individual creditors of either of the partners.

The learned circuit judge decreed a payment by the receiver to the petitioners of the proceeds of this lumber, together with the earnings of said fund while in the hands of the receiver. We think the petitioners were entitled to this order, and the same will be affirmed, with costs.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., took no part in the decision.