## MASTERS *v.* HARTMANN.

## HARTMANN *v.* MASTERS.

---

CORPORATIONS; OFFICERS; LIFE INSURANCE; PARTIES; EQUITY; RECEIVERS; TRUSTS AND TRUSTEES.

1. Officers of an insurance company who come into the possession of the assets of the company, which had been transferred to it by another company whose business and assets it had acquired, have no right to retain, without authority, such assets in their possession as self-constituted trustees for the policy holders of the company which had transferred them, and are responsible for such assets to a receiver of the company to which they had been transferred; and if they have sold any of them are liable for their actual value; nor have such officers, where they refuse to attend directors meetings, any right to acquire new offices for the company and to charge it with rent for the same.

2. Policy holders of an insurance company which had transferred its assets to another insurance company, who had acquiesced in such transfer and accepted the liability of that company and paid premiums to it, are not necessary parties to a suit in equity for the appointment of a receiver for the company to which such assets had been transferred.

3. Capital stock of an insurance company issued to certain of its officers, who gave no consideration for it, cannot be made the basis of any claim in a receivership proceeding affecting the company.

4. Where disagreement of the members of the board of directors of a corporation, who are equally divided in number, results in a suspension of the business of the company, leaving nobody to manage its affairs or conserve its assets, a receiver will be appointed to take possession of its property and manage its affairs under the supervision of the court.

5. In a receivership proceeding involving an insurance company which had taken over the assets of another company and assumed its obligations, the assets, including those received from the transferring company, will be conserved and used for the benefit of its policy holders and the policy holders of the transferring company who have accepted the liability of the other company.

Nos. 2873 and 2874.    Submitted March 20, 1916.    Decided May 22, 1916.

HEARING on cross appeals from a decree of the Supreme Court of the District of Columbia in a suit in equity for the appointment of a receiver of an insurance company, and to recover certain sums of money from its officers.

*Decree in No. 2873 reversed and Appeal in No. 2874 dismissed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by both parties from a decree in a suit in equity brought by Charles A. Hartmann and Bion H. Cohill against the Royal Insurance Company, Samuel J. Masters, John B. Kinnear, and Frank T. Evans to have a receiver appointed for the Royal Insurance Company, and to recover certain sums of money from Masters and Kinnear. Evans is a formal party defendant.

It appears from the pleading and evidence that the Royal Insurance Company was a corporation of the District of Columbia, engaged in the business of industrial insurance, and that its capital stock, consisting of $1,000, was held by Hartmann, Cohill, & Evans.

The Modern Workmen of the World was a corporation of the State of Virginia. It was a mutual company, engaged in issuing certificates to members, entitling them to sick benefits and life insurance. It had no capital stock, and had been organized by Masters, Kinnear, & Andrews, who were its board of directors, and empowered to represent the corporation in all matters.

January 24, 1911, Masters, Kinnear, & Andrews proposed to the Royal Insurance Company to transfer to it all of its liabilities and assets. The assignment was made in writing, and the Royal Insurance Company assumed all of the liabilities of the Modern Workmen of the World, and its obligations to certificate holders. Notice was given to these certificate holders, and a printed slip called a rider was attached to their certificates, showing that the Royal Insurance Company had assumed all liability. By agreement between the parties, one half of the capital stock of the Royal Insurance Company was assigned to Masters, Kinnear, & Andrews, who became directors of the Royal Insurance Company with Hartmann, Cohill, & Evans. Masters was elected president and Kinnear treasurer. By this arrangement the directors were equally divided, and no business could be transacted unless one of the divided forces should cooperate with the others. The Modern Workmen of the World had assets at the time amounting to $42,138.44, which were duly assigned to the Royal Insurance Company, and the possession of which was in Kinnear as treasurer of the Royal Insurance Company. The certificate holders of the Modern Workmen of the World paid their assessments to the Royal Insurance Company, and claims by them were paid by the Royal Insurance Company, as were also those of the certificate holders of the Royal Insurance Company.

During this time all of the parties, in order to satisfy the insurance law of the District of Columbia, made a note to the Commercial National Bank for twenty-five thousand ($25,-000) dollars, and deposited therewith all of the aforesaid assets received from the Modern Workmen of the World and certain securities of Masters and Kinnear as collateral security. The bank deposited twenty-five thousand ($25,000) dollars to the credit of the insurance company, but the insurance commissioner refused to issue the license.

The Royal Insurance Company, at that time, occupied offices in Washington, for which they had executed a lease at one hundred and twenty-five ($125) dollars per month.

It was apparent that the insurance commissioner of the District and the Royal Insurance Company could not come to terms, and its business was being wrecked.

Meetings of the board were duly called by the secretary, but Masters, Kinnear, & Andrews, though regularly notified, refused to attend, and no business could be transacted.

It appears that part of a private agreement between Masters, Kinnear, & Andrews and Hartmann, Cohill, & Evans was that twenty-five thousand ($25,000) dollars additional stock should be issued by the Royal Insurance Company, and divided equally between the aforesaid parties. In the meantime, Masters, Kinnear, & Andrews returned the $25,000 borrowed from the Commercial National Bank, and received the note and collateral. They proceeded in their own names to act for the Royal Insurance Company, taking its receipts and paying some of its obligations. They surrendered the lease of the Royal Insurance Company offices, turning over to the lessor, in satisfaction, the linoleum on the floor of the office, valued at two hundred dollars. They, at the same time, undertook to hold the securities assigned by the Modern Workmen of the World to the Royal Insurance Company as trustee for the Modern Workmen of the World, which they then undertook to represent. The business of the Royal Insurance Company was practically suspended. Hart-

mann, Cohill, & Evans, having failed to procure a meeting of the Royal Insurance Company, then began this suit.

The equity court, after the report of the auditor, entered a decree appointing W. Gwynn Gardiner trustee for the stockholders of the Royal Insurance Company, and directed the defendants Masters and Kinnear to pay to him the sum of $1,260.-29, being the value of the assets of the Royal Insurance Company as of January 31, 1912, found by the auditor, with interest until paid; that Masters and Kinnear deliver to the clerk of the court all of the assets of the Modern Workmen of the World as they existed on the 31st day of January, 1912, according to the auditor's report, or pay to him their value as found by the auditor on said date, to wit, $25,645, the same to be held by the clerk, subject to the order of the court, to indemnify and save harmless the stockholders of the Royal Insurance Company from any and all loss, damage, and costs incurred and suffered by them by reason of any claim successfully asserted against them by the policy holders of the Modern Workmen of the World, provided that the Modern Workmen of the World may receive from said clerk the income from said fund, and apply the same to the uses of the Modern Workmen of the World as may be lawfully directed by its proper officers and board of directors; that Masters and Kinnear deliver to the trustee aforesaid all shares of stock representing the capital stock of the Royal Insurance Company held by them, and including shares of R. P. Andrews, who, in the meantime, had resigned and returned his shares to them, said stock being of the par value of $25,000. Costs of suit to be paid, one half by plaintiffs and one half by Masters and Kinnear.

An appeal from this decree was taken by both parties.

*Mr. Henry E. Davis, Mr. W. J. Lambert,* and *Mr. J. K. M. Norton* for Masters, Kinnear, and Royal Life Insurance Company.

*Mr. W. G. Gardiner* for Hartmann, Cohill & Evans.

Mr. Chief Justice SHEPARD delivered the opinion of the
Court:

The action of Masters and Kinnear is indefensible. Assum-
ing that they may have been authorized to make the transaction
with the bank, whereby they discharged the notes of themselves
and Hartmann and Cohill with the money borrowed thereon,
they had no right, without the authorization of the Royal In-
surance Company, to take the assets formerly assigned by the
Modern Workmen of the World and hold the same for the
Modern Workmen of the World as they professed to do. They
had come into possession of these assets as directors and officers
of the Royal Insurance Company. The Modern Workmen of
the World had accepted the transfer, and it had retired from
business. They were self-constituted trustees of the supposed
interest of the Modern Workmen of the World.

The court was right in holding them responsible for the
assets of the Royal Insurance Company in their possession
at the time of the misunderstanding between the parties, and
also for the value of the furniture converted by them. They
had no right to sell any of this, and must be held liable
for its actual value at the time. The surrender of the
lease of the offices of the Royal Insurance Company was beyond
the power of Masters and Kinnear as president and treas-
urer, without the approval of the board of directors, but the
same and the surrender of the linoleum floor covering to affect
the cancelation of the lease may be upheld as to the actual bene-
fit of the Royal Insurance Company, but they had no right to
transfer the business of the company to the new office occupied
by them in pursuance of their attempt to reorganize the Modern
Workmen of the World and to charge the Royal Insurance Com-
pay with a part of the rent of the same.

The certificate holders of the Modern Workmen of the World,
having accepted the liability of the Royal Insurance Company,
were not necessary parties to this proceeding. They had ac-
quiesced in the transfer, accepted the liability of the Royal

Insurance Company, made payments of premiums to it, and received benefits therefrom. Their interests, whatever they may be, or as they may accrue, are to be protected by the Royal Insurance Company. It is obvious that there is no foundation for the issue of the twenty-five thousand ($25,000) dollars stock in the Royal Insurance Company, the same not having been paid for, and no one is entitled to claim the same.

By the disagreement of the directors of the Royal Insurance Company, and the equal division of the members thereof, that corporation cannot proceed with its business. There is nobody to manage its affairs and conserve its assets, and it has practically suspended.

This situation, we think, calls for the appointment of a receiver for the Royal Insurance Company, who shall take possession of its property and undertake to reorganize and manage its affairs under the supervision of the court. *Sheridan Brick Works* v. *Marion Trust Co.* 157 Ind. 292–299, 87 Am. St. Rep. 207, 61 N. E. 666; *Jasper Land Co.* v. *Wallis,* 123 Ala. 652–656, 26 So. 659; *D. A. Tompkins Co.* v. *Catawba Mills,* 82 Fed. 780.

The assets of the Royal Insurance Company, including those received from the Modern Workmen of the World, are to be conserved and used for the benefit of the policy holders of the Royal Insurance Company and the Modern Workmen of the World, who have accepted the liability of the Royal Insurance Company, and not for that of the stockholders of the Royal Insurance Company. They are in the nature of a trust for the benefit of the certificate holders in that company.

The decree in No. 2873, Hartmann et al., against Masters and Kinnear, is reversed, with costs, and the cause remanded with direction to appoint a receiver for the Royal Insurance Company, and the further order that Masters and Kinnear deliver to him the assets of the Royal Insurance Company derived from the Modern Workmen of the World, as shown in the auditor's report. In the event any of these assets have been converted into money, they shall be made to account for the

money, with interest from the date of its receipt; also to surrender the books and records of the Royal Insurance Company. And the court will enter such other orders as may be necessary to carry out the objects of this decree as are not inconsistent with this opinion.

This conclusion makes it unnecessary to consider the appeal in No. 2874; and that appeal is dismissed, with costs.

*Reversed.*

A petition for a modification of the decree was denied July 5, 1916.