# CATES v. ALLEN.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF MISSISSIPPI.

No. 153. Argued March 22, 1893. — Decided May 10, 1893.

A contract creditor who has not reduced his claim to judgment has no standing in a Circuit Court of the United States, sitting as a court of equity, upon a bill to set aside and vacate a fraudulent conveyance.

*Scott* v. *Neely*, 140 U. S. 106, affirmed and applied.

*Holland* v. *Challen*, 110 U. S. 15, and *Whitehead* v. *Shattuck*, 138 U. S. 146, distinguished.

The fact that a court of chancery may summon a jury cannot be regarded as the equivalent of the right of a trial by jury, secured by the Seventh Amendment to the Constitution.

When a suit over which a state court has full jurisdiction in equity is removed to a Circuit Court of the United States on the ground of diverse citizenship, and it appears that the courts of the United States have no jurisdiction in equity over such a controversy, the cause should be remanded to the state court, instead of dismissing it for want of jurisdiction.

R. C. CATES, D. Andrews and L. L. Cates, as individuals and as composing the firms of Luke Cates & Company and Andrews, Cates & Company, made their deed of assignment for the benefit of creditors, December 7, 1886, whereby they conveyed their property to assignees therein mentioned to be converted into money and applied to the payment of their debts, certain creditors being preferred. J. H. Allen, T. W. West, and J. C. Bush, citizens, respectively, of Louisiana, Missouri, and Alabama, and doing business in New Orleans as general commission merchants and cotton factors, under the name of Allen, West and Bush, filed their bill of complaint, December 8, 1886, in the chancery court of Lee County, Mississippi, against R. C. Cates, L. L. Cates, D. Andrews, and the assignees mentioned in the assignment, alleging an indebtedness to the complainants of more than $16,000 on open account, and charging that the assignment above mentioned was fraudulent in law and in fact; made without any valuable consideration; and with the fraudulent intent to hinder, delay, and defraud the complainants and other creditors; and that the same ought to be set aside and the property assigned subjected to the payment of complainants' demand. The bill also charged that one of the assignees, who at the time of the filing of the bill was in possession of a large part of the assigned property, was insolvent, and that it would be dangerous to allow him to remain in the possession and control thereof; that he was in possession of the books of account and choses in action of the assignors, and was proceeding to collect the same; that there was danger that they would be lost to complainants and the other creditors; and that irreparable injury might thereby result. The bill prayed for answers under oath, and that on final hearing the assignment might be decreed to be void and set aside; that all the property

covered by the assignment might be subjected to the payment of complainants' debts and then to the payment of such other demands as might be brought before the court; for an injunction; for a writ of sequestration; for a receiver; that the filing of the bill be held to give complainants the first lien on the effects of the said debtors in the hands of the assignees, or either of the parties or any other person; and for general relief. A writ of sequestration was issued and the sheriff took possession of the property, and a number of other creditors were subsequently admitted as co-complainants.

On December 15, 1886, Allen, West, and Bush and their co-complainants filed their petition to remove the cause into the United States District Court for the Northern District of Mississippi, exercising the jurisdiction of a Circuit Court of the United States, and bond was given and the cause removed accordingly. Receivers were thereafter appointed, and on April 15, 1887, the Tishomingo Savings Institution, a preferred creditor, was made a defendant. A demurrer was filed alleging as grounds that there was no equity on the face of the bill; that the claims of complainants had not been reduced to judgment; that they had no lien and were not entitled to file a bill under the law; and for want of proper parties. This demurrer was overruled and defendants answered. Evidence was taken and hearing had, and on October 28, 1887, the court adjudged the assignment to be fraudulent and void, and set the same aside; found the sum of $17,732.71 to be due Allen, West, and Bush; decreed that indebtedness to be a first lien and charge on the assets of Andrews, Cates & Co.; and ordered the receiver to pay said sum out of the proceeds of the sales and collections of and from the assets of that firm. Various other orders were entered in that behalf and with reference to other funds and appropriations for the claims of other creditors, which it is unnecessary to notice. The report of the receiver showed amounts paid to Allen, West, and Bush of nearly $14,000.

*Mr. E. H. Bristow,* with whom was *Mr. W. B. Walker* on the brief, for appellants.

*Mr. John M. Allen* for appellees.

The first question presented in this case is one not altogether free from difficulty, and one which has not, so far as I am aware, been directly passed upon by this court. That is the question as to whether or not the United States equity court will entertain a suit properly begun in a state chancery court, and removed in accordance with the laws for removal of causes from state to Federal courts, where the Federal Court would not have taken original jurisdiction. I am aware that since the final decree in the case under consideration that in the case of *Scott* v. *Neely,* 140 U. S. 106, this court has decided that a simple contract creditor cannot avail himself of the rights given by sections 1843 and 1845 of the code of Mississippi by filing a bill in the United States court. If the principles laid down in this case are applicable to removed cases, it would seem to settle the jurisdictional question against us. I cannot believe, however, that this case is necessarily controlled by the reasoning in the case of *Scott* v. *Neely.* We have here a case properly brought and cognizable in the chancery court of Lee county, Mississippi. If the allegations of the bill were true it entitled us not only to have the assignment set aside but gave us a lien on all the property assigned from the filing of the bill, and entitled us to a decree for the amount of our debt, to be satisfied out of this property.

Now, then, being citizens of different States, from the appellants, the defendants below, and having a controversy with a sufficient amount in controversy, we were entitled under the removal statute to remove the case to the United States Circuit Court, and this we did. Now the question is: did we forfeit any of our rights by this removal?

Does the law give us the right to remove and then destroy every right we had in the state court by the removal? I am sure this cannot be the law. Counsel for appellants admit that there are some cases of which the Federal Court would not have had original jurisdiction, but of which they can acquire jurisdiction by removal, and they cite the following

cases in support of this position: *Barney* v. *Bank*, 5 Blatchford, 107; *Sayles* v. *Ins. Co.* 2 Curtis, 212; *Warner* v. *Railroad*, 13 Blatchford, 231. I have examined these cases, but I do not find that they disclose a distinction in principle between them and this case.

This court has said time and again that a person loses no right by coming into the United States court. If this be true, we have certainly lost none. We have the right in the state court to try the issues raised by our bill and to have a decree condemning the property and giving us our money if we proved our case. Now we had the right of removal. Did we loose our other rights by exercising the right of removal? Suppose the petition for removal had been made by the defendants in the court below. Who can say they were not entitled to remove their case to the United States court? Then if they had the right of removal, could they remove a case from a court in which their adversary had a good case to a court where by the act of removal the case was destroyed? This could not be. If such were the case it would furnish a new method of defence. Then so far as the proceeding in the United States court is concerned, it makes no difference which party removed the case.

The conclusions reached by this court in the case of *Scott* v. *Neely* were founded on the judiciary act of 1789, defining the jurisdiction of equity courts and the further reasoning that to enforce the Mississippi statute in the United States equity court would be to deprive parties of their constitutional right to a trial by jury. I recognize the soundness of the reasoning in that case, based on the Federal statutes defining the jurisdiction of equity courts; but it does seem to me that the removal statute being an enactment of equal dignity, and of a later date amounts to a modification of the act of 1789, which would give the United States equity court jurisdiction to try and dispose of this case.

So far as the constitutional objection, that the appellants were deprived of the right of trial by jury is concerned, I do not think it can avail the appellants in this case. I do not understand that because a case is tried on the equity side of

the docket, that a party is necessarily deprived of the right to try an issue properly triable by a jury.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

Complainants were simple contract creditors, who had not reduced their claims to judgment, and therefore had no standing in the United States Circuit Court, sitting as a court of equity, upon a bill to set aside and vacate a fraudulent conveyance. The suit was originally brought in the state court under sections 1843 and 1845 of the Code of Mississippi of 1880, which provided that the chancery courts of that State should have jurisdiction of bills exhibited by creditors who had not obtained judgments at law, or, having judgments, had not had executions returned unsatisfied, to set aside fraudulent conveyances of property or other devices resorted to for the purpose of hindering, delaying, or defrauding creditors, and might subject the property to the satisfaction of the demands of such creditors as if the complainants had had judgment and execution thereon returned no property found; and that " the creditor in such case shall have a lien upon the property described therein from the filing of his bill, except as against *bona fide* purchasers before the service of process upon the defendant in such bill."

These sections were considered in *Scott* v. *Neely*, 140 U. S. 106, and it was therein determined that the Circuit Courts of the United States in Mississippi could not under their operation take jurisdiction of a bill in equity to subject the property of the defendants to the payment of a simple contract debt in advance of any proceeding at law, either to establish the validity or amount of the debt, or to enforce its collection. It was there shown that the Constitution of the United States, in creating and defining the judicial power of the general government, had established the distinction between law and equity, and that equitable relief in aid of demands cognizable in the courts of the United States only on their law side could not be sought in the same action, although allowable in the

state courts by virtue of state legislation; *Bennett* v. *Butterworth,* 11 How. 669; *Thompson* v. *Railroad Companies,* 6 Wall. 134; *Scott* v. *Armstrong,* 146 U. S. 499, 512; and that the Code of Mississippi in giving to a simple contract creditor a right to seek in equity, in advance of any judgment or legal proceedings upon his contract, the removal of obstacles to the recovery of his claim caused by fraudulent conveyances of property whereby the whole suit involving the determination of the validity of the contract and the amount due thereon is treated as one in equity to be heard and disposed of without a trial by jury, could not be enforced in the courts of the United States because in conflict with the constitutional provision by which the right to a trial by jury is secured.

The principle that a general creditor cannot assail as fraudulent against creditors, an assignment or transfer of property made by his debtor until the creditor has first established his debt by the judgment of a court of competent jurisdiction, and has either acquired a lien upon the property, or is in a situation to perfect a lien thereon and subject it to the payment of his judgment, upon the removal of the obstacle presented by the fraudulent assignment or transfer, is elementary. Waite on Fraud. Con. sec. 73, and cases cited. The existence of judgment, or of judgment and execution, is necessary, first, as adjudicating and definitely establishing the legal demand, and, second, as exhausting the legal remedy.

This was well settled in Mississippi prior to the enactment in question. In *Partee* v. *Mathews,* 53 Mississippi, 140, it was ruled by the Supreme Court that no creditor but one who has a lien by judgment or otherwise, in full force at the time the bill is filed, can attack in equity a transfer of property as fraudulent; and that, as between equitable and legal assets, the creditor must exhaust legal means, by the issue of execution and its return *nulla bona,* in order to reach the first, while, as to the latter, a judgment which acts as a lien on the property sought to be charged would be sufficient as the basis of a bill.

In *Fleming* v. *Grafton,* 54 Mississippi, 79, the subject was very much considered, and the English and American author-

ities cited to a large extent, and the opinion concludes: "Courts of equity are not ordinarily tribunals for the collection of debts; some special reason must be offered by the creditor before they will extend aid to him. If he is a judgment creditor, he must show that he has a lien, either by judgment, if the statute gives such lien; if it arises from the execution, he must show that one has been issued; or, if it arises from a levy of the writ, that must have been made."

In *Scott* v. *Neely*, it was said by Mr. Justice Field, (p. 113,) speaking for the court: "In all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered, accompanied by a right to the appropriation of the property of the debtor for its payment, or, to speak with greater accuracy, there must be, in addition to such acknowledged or established debt, an interest in the property or a lien thereon created by contract or by some distinct legal proceeding. *Smith* v. *Railroad Co.*, 99 U. S. 398, 401; *Angell* v. *Draper*, 1 Vern. 398, 399; *Shirley* v. *Watts*, 3 Atk. 200; *Wiggins* v. *Armstrong*, 2 Johns. 144; *McElwain* v. *Willis*, 9 Wend. 548, 556; *Crippen* v. *Hudson*, 3 Kernan, 161; *Jones* v. *Green*, 1 Wall. 330. . . . It is the existence, before the suit in equity is instituted, of a lien upon or interest in the property, created by contract or by contribution to its value by labor or material, or by judicial proceedings had, which distinguishes cases for the enforcement of such lien or interest from the case at bar."

The mere fact that a party is a creditor is not enough. He must be a creditor with a specific right or equity in the property; and this is the foundation of the jurisdiction in chancery, because jurisdiction on account of the alleged fraud of the debtor does not attach as against the immediate parties to the impugned transfer, except in aid of the legal right.

Doubtless new classes of cases may by legislative action be directed to be tried in chancery, but they must, when tested by the general principles of equity, be of an equitable character, or based on some recognized ground of equity interposition. This will be found to be true of the decisions in

*Holland* v. *Challen,* 110 U. S. 15; *Whitehead* v. *Shattuck,* 138 U. S. 146, and like cases.

The fact that section 1845 aims to create a lien by the filing of the bill does not affect the question, for in order to invoke equity interposition in the United States courts the lien must exist at the time the bill is filed and form its basis, and to allow a lien resulting from the issue of process to constitute such ground would be to permit state legislation to withdraw all actions at law from the one court to the other, and unite legal and equitable claims in the same action, which cannot be allowed in the practice of the courts of the United States, in which the distinction between law and equity is matter of substance and not merely of form and procedure. And as the ascertainment of the complainants' demand is by action at law, the fact that the chancery court has the power to summon a jury on occasion cannot be regarded as the equivalent of the right of trial by jury secured by the Seventh Amendment. *Whitehead* v. *Shattuck,* 138 U. S. 146; *Buzard* v. *Houston,* 119 U. S. 347.

The result is that this decree must be reversed, as the case comes directly within *Scott* v. *Neely,* from the rule laid down in which we have no disposition to recede. It is suggested that the bill might be sustained under the prayer for general relief, as brought for the administration of the assets under the assignment, but such relief would not be agreeable to the case made by the bill, which was directed to the setting aside of that instrument. The Circuit Court was, therefore, in error in proceeding in the case.

The bill was originally filed in the state court and removed December 15, 1886, under the act of March 3, 1875, 18 Stat. 470, c. 137, on the ground of diverse citizenship. By the fifth section of that act, if, in any suit "removed from a state court to a Circuit Court of the United States, it shall appear to the satisfaction of said Circuit Court, at any time after such suit has been brought or removed thereto, that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court, . . . the said Circuit Court shall proceed no further therein but shall dismiss

the suit or remand it to the court from which it was removed as justice may require, and shall make such order as to costs as shall be just." Under the act of March 3, 1887, 24 Stat. 552, c. 373, a Circuit Court may remand a case upon deciding that it was improperly removed. So far as citizenship and amount were concerned the plaintiffs were entitled to file their petition for removal, but the nature of the controversy was such that the suit was not properly cognizable in the Circuit Court for the reasons heretofore given. While there are cases where the courts of the United States may acquire jurisdiction by removal from state courts when jurisdiction would not have attached if the suits had been originally brought therein, those are cases of jurisdiction over the parties and not of jurisdiction based upon the subject-matter of the litigation, and furnish no rule for the disposition of cases such as that before us. But it is not to be concluded where diverse citizenship might enable the parties to remove a case but for the objection arising from the nature of the controversy, that, if such removal has been had, the suit must be dismissed on the ground of want of jurisdiction. On the contrary, we are of opinion that it is the duty of the Circuit Court under such circumstances to remand the cause. The Circuit Court has jurisdiction to determine whether or not the case was properly removed, and this court has jurisdiction to pass upon that determination.

In *Thompson* v. *Railroad Companies*, 6 Wall. 134, an ordinary action at law was brought in the state court and removed to the United States court, where a bill in equity was substituted by leave of court, and the suit progressed as a suit in chancery. It was held that the distinctions between the two kinds of proceeding could not be obliterated by state legislation, and the decree was reversed, and the cause remanded with directions to dismiss the bill without prejudice. In the case before us a bill in equity sustainable in the state court was removed by the complainants under the act of 1875, and it was the duty of the Circuit Court upon ascertaining that it was improperly removed to remand the case. Under the acts of Congress that court was not compelled to dismiss the case,

but might have remanded it, and we may, therefore, direct it to do now what should have been done in the first instance. *Mansfield, Coldwater &c. Railway* v. *Swan,* 111 U. S. 379.

It will be for the state court to determine what orders should be made, if any, in regard to the amounts complainants have received under the decrees of the Circuit Court. As the removal was upon the application of appellees, they must be cast in the costs.

> *The decree of the Circuit Court is accordingly reversed with costs against the appellees, and the cause remanded to the Circuit Court with directions to render judgment against them for costs in that court, and to remand the cause to the chancery court of Lee County, Mississippi, and it is so ordered.*

MR. JUSTICE BROWN, with whom concurred MR. JUSTICE JACKSON, dissenting.

This was a bill in equity filed in the state court by creditors, to set aside an alleged fraudulent assignment, under a provision of the Mississippi Code, which gives the chancery court of that State jurisdiction of bills by creditors who have not obtained judgments, or, having judgments, have not had executions returned unsatisfied, to set aside fraudulent conveyances of property, or other devices resorted to for the purpose of defrauding creditors. The case was removed to the Circuit Court of the United States under the act of 1875, the second section of which provides: "That any suit of a civil nature, at law or in equity, now pending or hereafter brought in any state court, where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars, . . . in which there shall be a controversy between citizens of different States, . . . either party may remove said suit," etc.

In the opinion of the court this case is controlled by that of *Scott* v. *Neely,* 140 U. S. 106, in which it was held that the Circuit Courts of the United States in Mississippi could not, under this provision of the code of that State, take jurisdic-

tion of a bill in equity to subject the property of the defendants to the payment of a simple contract debt of one of them in advance of any proceedings at law, either to establish the validity and amount of the debt, or to force its collection, for the reason that in such proceedings the defendant is entitled under the Constitution to a trial by jury of the existence or the amount of the debt. While I freely concede the general rule to be as stated, that a bill of this kind will not be entertained without a prior judgment and execution at law, I am unwilling to admit that the Federal courts are incompetent to administer a state law which provides that such a bill may be filed by a simple contract creditor, where the requisite diversity of citizenship exists, and the requisite amount is involved. In a case where such a bill was filed in the state court the statute then in force gave to either party the absolute right of removal of the suit to the Federal court, upon the clear assumption that the Federal court had the same power to administer the law that the state court had. I freely concede that, if the state system of jurisprudence should invest the court of chancery with an ordinary common law jurisdiction, as, for example, with jurisdiction of an action upon a promissory note, such cause, when removed to the Federal court, would simply be placed on the common law side, and be tried by a jury. But in this case the jurisdiction of the Federal court as a court of chancery may be supported, not only upon the ground that the proof of the debt is merely an incidental feature of the bill, but upon the further ground, stated in the statute, that "the creditor in such case shall have a lien upon the property described therein from the filing of his bill," etc., a fact which in *Case* v. *Beauregard,* 101 U. S. 688, was held to obviate the necessity of a prior judgment and execution.

I had always supposed it to be a cardinal rule of Federal jurisprudence that the Federal courts are competent to administer any state statute investing parties with a substantial right. As was said in *Ex parte McNiel,* 13 Wall. 236, 243: "A state law cannot give jurisdiction to any Federal court, but that is not a question in this case. A state law may give

a substantial right of such a character that where there is no impediment arising from the residence of the parties, the right may be enforced in the proper Federal tribunal, whether it be a court of equity, of admiralty, or of common law. The statute in such cases does not confer the jurisdiction. That exists already, and it is invoked to give effect to the right by applying the appropriate remedy. This principle may be laid down as axiomatic in our National jurisprudence. A party forfeits nothing by going into a Federal tribunal. Jurisdiction having attached, his case is tried there upon the same principles, and its determination is governed by the same considerations, as if it had been brought in the proper state tribunal of the same locality." So also in *Davis* v. *Gray*, 16 Wall. 203, 221: "A party by going into a National court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality. The wise policy of the Constitution gives him a choice of tribunals." So also in the case of *Broderick's Will*, 21 Wall. 503, 520, it is said that "whilst it is true that alterations in the jurisdiction of the state courts cannot affect the equitable jurisdiction of Circuit Courts of the United States, so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the Circuit Courts as well as by the courts of the State." In the case of *Holland* v. *Challen*, 110 U. S. 15, a statute of Nebraska providing that an action might be brought and prosecuted to a final decree by any person claiming title to real estate, whether in actual possession or not, against any person claiming an adverse estate or interest therein, for the purpose of determining such estate and interest, and quieting title, was held to be enforceable in the Federal courts, although it dispensed with the general rule of equity that, in order to maintain a bill to quiet title, it was necessary that the party should be in possession, and that his title should have been established by law. The statute under consideration merely dispenses with the general rule of courts of equity that in order to maintain a creditor's bill a prior judgment and execution at law is necessary, and the case appears to me to be directly in point.

In this case the court of equity proceeds to establish the debt, not as a personal judgment against the debtor, which may be sued upon in any other court, but for a purpose special to that case, in order to reach property which has been fraudulently conveyed and to appropriate it to the payment of the debt. If the object of the proceeding were the establishment of a debt for all purposes, which should become *res adjudicata* in other proceedings, and be suable elsewhere as an established claim against the debtor, or were not a mere incident to the chancery jurisdiction, I can understand why the constitutional provision might apply. But in this case I see no more reason for requiring a common law action to establish the debt than in case of the foreclosure of a mortgage or the enforcement of a mechanics' lien, where proof of an existing debt is equally necessary to warrant a decree. In *Stewart* v. *Dunham*, 115 U. S. 61, a bill in equity was filed by creditors in the chancery court of Mississippi under this statute, was removed to the Circuit Court of the United States, and was prosecuted to a decree in that court, although it is but just to say that no question seems to have been made with regard to the jurisdiction in this particular. The same may be said of *Dewey* v. *West Fairmont Gas Coal Co.*, 123 U. S. 329, in which a bill under a similar statute of West Virginia was sustained in an opinion by Mr. Justice Matthews. Indeed, proceedings under these statutes, which are common to many of the States, are in the nature of an equitable attachment, and operate to impound the debtor's property for the payment of the claim.

The logical consequence of the position assumed by the court in this case is that it is compelled to remand the case for a reason entirely outside of the removal acts, and thus to deny to the removing party the benefit of the act. I understand the duty imposed by the fifth section of the act to remand a cause which it appears "does not really and substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court," to be limited to disputes or controversies not within the jurisdiction of the Circuit Court by reason of the requisite citizenship not really existing, or being collusively obtained, as in *Hawes* v. *Oakland*, 104

U. S. 450, or where, upon an examination of the record, the requisite amount is found not to have been involved, as in *Walter* v. *Northeastern Railroad,* 147 U. S. 370.

I have never known of a Federal court admitting its inability to do justice between the parties and remanding the case upon that ground. In *Thompson* v. *Railroad Companies,* 6 Wall. 134, it appeared only that a civil action, removed from a state court, which was essentially a common law action, could not be proceeded with in a Federal court as an equity case — a proposition I certainly should not deny. Indeed, in that case it was said that "as the action was a purely legal one, if they [the plaintiffs] could have maintained it in their names in the state courts, they had an equal right to maintain it in their names when it arrived in the Federal court." The only error was in not proceeding with it as a common law action in the Federal court.

I am authorized to state that Mr. JUSTICE JACKSON concurs in this dissent.