# STRASBURGER v. DODGE.

ASSIGNMENTS FOR BENEFIT OF CREDITORS; PREFERENCES; CON-
FESSIONS OF JUDGMENT; CONSTITUTIONAL LAW.

1. A confession of judgment by an insolvent debtor in favor of a
   *bona fide* creditor is not such a preference as is prohibited by
   act of Congress of February 24, 1893, Sec. 2, declaring void
   provisions in assignments giving preference to one creditor
   over another, although the effect of such a confession of judg-
   ment may be to give such preference.
2. Where a statute of a State is adopted and enacted by Congress
   for this District, without material change, the interpretation
   given the statute by the courts of the State before its adoption
   here, will be followed by the courts of this District.
3. Whether section 3 of the act of Congress of February 24, 1893,
   authorizing creditors to attack assignments claimed to be
   fraudulent, without first reducing their claims to judgment,
   was in the power of Congress to enact, *quære*.

No. 699.  Submitted October 14, 1897.  Decided January 4, 1898.

HEARING on an appeal by the defendants from a decree
in a suit by simple contract creditors to have certain con-
fessions of judgment declared a voluntary assignment with
preferences. *Reversed.*

The COURT in its opinion stated the case as follows:

This is an appeal from a decree sustaining a creditors'
bill filed by simple contract creditors, and declaring certain
confessions of judgment made by the debtor to constitute a
voluntary assignment for the benefit of all creditors. The
bill was filed by Dodge Bros. for themselves and such other
creditors as might intervene, against Abraham Strasburger,
the debtor, and Rich & Co., Steinem Bros., Cohen-Adler
Shoe Co., and the Morrow Shoe Co., with whom were joined
Daniel M. Ransdell, the marshal of the District.

It was alleged that the defendant Strasburger was insol-
vent on the 5th day of July, 1893, and indebted to sundry

persons in the sum of about $35,000. That he contracted much of said indebtedness with intent to defraud, and has secreted some goods and sold others at less than cost. That on said date he conspired with the several defendants, claiming to be creditors, to give them certain preferences, and to defraud plaintiffs and other creditors. That instead of making a formal assignment, " knowing that if he executed such a formal assignment he could not give preference to one creditor over another," he conspired with his codefendants to accomplish their preference by confessing judgments in their favor. That in. so doing he confessed judgment as follows, on July 5, 1893 : Steinem Bros. $1,000; Rich & Co., $3,306.50; Cohen-Adler Shoe Co., $4,769.61· That on the same day writs of *fieri facias* were issued upon said judgments with the knowledge and consent of said Strasburger, and were by the said Ransdell, marshal as aforesaid, levied on all of the visible goods, property and assets of said Strasburger, consisting of his stock in trade, in two stores kept by him in the city of Washington. That said assets have been appraised as of the value of $11,700 by said marshal, and have been advertised for sale by him under said writs. That the Morrow Shoe Co., defendant, filed suit against said Strasburger ·on July 10, 1893, and issued an attachment therein, which was given to the said marshal for execution upon the goods in his hands. That the said confessions of judgment " are in effect and reality a voluntary assignment by said Strasburger for the benefit of his creditors, and should be so construed and declared," and said preferences should be declared void and the property distributed *pro rata* among all creditors, etc.

The prayers were: (1) That the marshal be restrained from selling the goods; (2) That a receiver be appointed; (3) That the proceedings be decreed to constitute a voluntary assignment for the benefit of all creditors; (4) That the judgments so confessed be declared void, and the plaintiffs therein enjoined from further proceedings at law; (5) That

the Morrow Shoe Co. be enjoined from further proceedings in attachment, and that the same be set aside.

The several defendants answered under oath, denying the allegations of fraud, collusion, and so forth, in the bill, and giving a history of the indebtedness of Strasburger to them, which was alleged also to be just, due, etc.

Receivers were appointed *pendente lite,* and the property passed into their hands, and was sold for $11,443.93. After deducting expenses, charges, etc., there remained $7,152.40 to be applied to the claims of creditors under order of the court.

June 18, 1896, reference was made to the auditor to ascertain the names of creditors and the sums due each by Strasburger, and in his report appear the debts due the defendants upon which the judgments were confessed.

March 23, 1897, a final decree was entered declaring the proceedings in the several suits in which judgments were confessed and the goods seized to constitute a voluntary assignment for the benefit of all creditors, and ordering the distribution of the fund aforesaid *pro rata* among the creditors as shown in the auditor's report.

*Mr. Leon Tobriner, Mr. I. W. Nordlinger* and *Mr. J. J. Wilmarth* for the appellants:

1. The act of Congress of February 24, 1893, regulating assignments for the benefit of creditors, was intended to regulate provisions in deeds of assignment only. The act contemplates a deed, an instrument voluntarily executed and delivered—a common law deed of assignment for the benefit of creditors. It was intended to regulate such *deeds,* and nothing else. *Cissell* v. *Johnston,* 4 App. D. C. 335, 345; *Droop* v. *Ridenour,* 11 App. D. C. 224.

2. The courts of Illinois, from the statute of which State our act is taken, reject the theory of "constructive assignments." *Schroeder* v. *Walsh,* 120 Ill. 423; *Weber* v. *Wick,* 131 Ill. 533; *Farwell* v. *Nilsson,* 133 Ill. 45; *Young* v. *Clapp,*

147 Ill. 176; *Walker* v. *Ross*, 150 Ill. 50; *Peterson* v. *Tailoring Co.*, 150 Ill. 290. See also *Moore* v. *Meyer*, 47 Fed. Rep. 99, in which the question of constructive assignments is fully discussed in the light of the Illinois statute.

3. The rule announced and followed in the Illinois cases is similar to that adopted in those States which have statutory provisions of a like import as that State. In all cases cited, the courts have held against "constructive assignments," holding that statutes passed to regulate general assignments are to be limited in their scope to general assignments and are not to be applied to partial assignment, or to such other instruments than general assignments, unless such extended application is authorized by statute either expressly or by clear implication. This is the rule to be gleaned from the two cases in this court, and is the rule in the following States :—Michigan: *Warner* v. *Littlefield*, 80 Mich. 320; *Weber v. Childs*, 90 Mich. 498. Texas: *Hudson* v. *Eisensayer*, 79 Tex. 401; *Mills* v. *Passels*, 55 Fed. Rep. 588. Colorado: *Kellogg* v. *Thropp*, 4 Col. App. 470. North Dakota: *Cutler* v. *Pollock*, 4 N. Dak. 205. South Dakota: *Sandwich Mfg. Co.* v. *Max*, 24 L. R. A. 524. Indiana: *Gilbert* v. *McCorkle*, 110 Ind. 215. Missouri: *Hagardine* v. *Henderson*, 97 Mo. 375; *Jaffrey* v. *Mathews*, 120 Mo. 317. New Jersey: *Muchmore* v. *Budd*, 53 N. J. L. 369. Ohio: *Cross* v. *Carstens*, 49 Ohio St. 548. Pennsylvania: *Blakey's Appeal*, 7 Pa. St. 449; *Worman* v. *Wolfersberger*, 19 Pa. St. 59; *Guy* v. *McIlree*, 26 Pa. St. 93; *Banking Co.* v. *Fuller*, 110 Pa. St. 156. Iowa: *Lampson* v. *Arnold*, 19 Iowa, 479. Alabama: *Ellison* v. *Moses*, 95 Ala. 221. New York: *Berger* v. *Varrelmann*, 127 N. Y. 281; *Manning* v. *Beck*, 129 N. Y. 1; *Tompkins* v. *Hunter*, 24 N. Y. Supp. 8. Georgia: *Hollingsworth* v. *Johns*, 92 Ga. 429; *Fulton* v. *Bibian*, 25 S. E. Rep. Arkansas: *Fechheimer* v. *Robertson*, 53 Ark. 101.

No case in the Supreme Court has given rise to more discussion or been more frequently criticised by the State courts than has the case of *White* v. *Cotzhausen*, 129 U. S.

329, upon which so much reliance is placed by the appellees. In deciding that case, the Supreme Court supposed they were following the decisions of the courts of Illinois, in conformity with the rule so often announced, that in considering a local statute, that court will follow the decisions of the highest court of the State, the statute of which is being construed; and that the court intended, in the *Cotzhausen* case, to confine itself to this rule is plainly shown in its opinions in subsequent cases, arising under statutes similar to the one under consideration in that case. *Bank* v. *Bank,* 136 U. S. 233; *May* v. *Tenney,* 148 U. S. 60; *Bamberger* v. *Schoolfield,* 160 U. S. 149. See also, *Moore* v. *Meyer,* 47 Fed. Rep. 99. The fact is that the Supreme Court misintepreted the Illinois decisions, and that it appreciated its error can be inferred from the circumstance that whenever occasion has required a reference to the case, the court has been careful to say that its opinion was "in accordance with the decisions of the Supreme Court of that State, as understood by this court."

In the following cases the *Cotzhausen* case is reviewed, criticised, and not followed: *Walker* v. *Ross,* 150 Ill. 50; *Farwell* v. *Nilsson,* 133 Ill. 45, 53; *Wright* v. *Hutchinson,* 156 Ill. 582; *Tompkins* v. *Hunter,* 24 N. Y. Supp. 8, 11; *Sandwich* v. *Max,* 24 L. R. A. 524, 529, which reviews both the Federal and State decisions; *Cutler* v. *Pollock,* 4 N. Dak. 205.

Attention is also directed to the cases of *Lumber Co.* v. *Ott,* 142 U. S. 622; *Davis* v. *Schwartz,* 155 U. S. 631, in which the Iowa statute, stronger in its provisions than our act, was held not to apply to any transfer other than general assignments; and *Reagan* v. *Aiken,* 138 U. S. 109, 112, construing the Texas statute.

4. If *White* v. *Cotzhausen* is the law of this jurisdiction, the facts established herein do not justify its application to this case, for the reason that every material allegation of fraud and conspiracy is positively denied in the answer under oath, and the circumstances under which the judgments

were confessed fully explained. Assuming that Strasburger, by confessing the judgments, did intend to execute an assignment and give a preference, this motive, not· shown by the evidence to have been known by or communicated to the suing creditors, can not affect them. The creditors simply pursued a lawful remedy, and they should not be deprived of their rights by a hidden motive on the part of their debtor. *Hodges* v. *Coleman,* 76 Ala. 103, approved in *Bamberger* v. *Schoolfield,* 160 U. S. 160.

5. Complainants can not maintain this proceeding for the further reason that they are not judgment creditors, and in fact a portion of their claim had not matured at the time of the institution of the suit. *Scott* v. *Neely,* 140 U. S. 106; *Cattle Co.* v. *Frank,* 148 U. S. 603; *Cates* v. *Allen,* 149 U. S. 451.

*Mr. Chapin Brown, Mr. Arthur H. O'Connor, Mr. Henry P. Blair* and *Mr. Corcoran Thom* for the appellees:

1. The act of Congress of February 24, 1893, is a remedial statute, and its provisions are to be liberally construed so as to suppress the mischief and to advance the remedy. The mischief sought to be remedied was to prevent dishonest debtors, after accumulating indebtedness and acquiring property, from disposing of a large portion of such property in exchange for money and then disposing of the remainder to some preferred creditor, in fraud of others. The legislative purpose was not merely to prevent this being done by a general assignment, nor was it to prevent cases of actual fraud, for in the latter case the remedy existed, and in the case of an assignment nothing more was accomplished than by any other disposition.

The provisions of the statute are not to be confined to a formal deed of assignment. As said by the Supreme Court in the case of *White* v. *Cotzhausen,* 129 U. S. 329, " Of what avail will the statute be in securing equality among the creditors of a debtor who, being insolvent, has determined

to yield the dominion of his entire estate, and surrender it for the benefit of his creditors, if some of them can be preferred by the simple device of not making a formal assignment, and permitting them, under the cover or by means of conveyances, bills of sale, or written transfers, to take his whole estate on account of their respective debts, to the exclusion of other creditors?"

The provision of the Illinois statute construed in that case is identical with our own. That statute had been in force in Illinois for years before our act of Congress, and had also been construed by the Supreme Court before the adoption of the latter act. Congress could not have been in doubt as to the construction to be given it by the courts of this District; nor can there be any doubt that it was the intention of Congress to pass a law having that effect.

What the Supreme Court held in *White* v. *Cotzhausen* is in line with the decisions of the courts of many of the States where the question has come before them. *Armstrong* v. *Holland*, 35 Fla. 160; *Berry* v. *Cutts*, 42 Me. 445; *Preston* v. *Spaulding*, 120 Ill. 208; *Holt* v. *Bancroft*, 30 Ala. 193; *Perry* v. *Holden*, 22 Pick. 269; *Van Patten* v. *Burr*, 52 Iowa, 518; *Perry* v. *Vezina*, 63 Iowa, 25; *Gage* v. *Parry*, 69 Iowa, 605; *Heineman* v *Hart*, 55 Mich. 64; *Kellogg* v. *Root*, 23 Fed. 525; *Berger* v. *Varrelman*, 127 N. Y. 281; *Spelman* v. *Freedman*, 130 N. Y. 421.

The Supreme Court of Pennsylvania, construing a statute of that State which provided that "all assignments of property in trust which shall hereafter be made by debtors to trustees on account of inability at the time of the assignment to pay their debts, to prefer one or more creditors (except for the payment of wages of labor), shall be held and construed to inure to the benefit of all creditors in proportion to their respective demands," and, answering the contention that this prohibition was confined to preferences made in the assignment apparent on its face, said : " Such can not be the meaning of the law, but its true design is,

that when a debtor can not go on in business, but finds he must stop, his property shall be administered for the benefit of all his creditors alike, on the principle that equality is equity. . . . Inability to pay debts marks the period when business must stop, and the assignment at this time evinces the motives of the debtor to control the action of his creditors. He knows best the state of his affairs and when he is likely to stop. And the law intends, that on arriving at this point he shall not anticipate disclosure by placing his property in trust for his favorites and beyond the reach of others." *Bank's Appeal,* 57 Pa. St. 199. That case was cited and approved in *Fox* v. *Curtis,* 176 Pa. St. 52. See also *Kellogg* v. *Richardson,* 19 Fed. Rep. 70; *Krebs* v. *Ewin,* 22 Fed. Rep. 693; *Ferrand* v. *Gragerman,* 26 Fed. Rep. 812. A failing debtor will not be allowed to employ indirect means to accomplish that which the law prohibits being done directly. See *Craig* v. *Missouri,* 4 Pet. 433; *Cumming* v. *Missouri,* 4 Wall. 325.

In the following cases, presenting questions similar to the case at bar, the principles for which we contend have been applied: *Winner* v. *Hoyt,* 66 Wis. 227; *Strong* v. *Irving,* 91 Wis. 29; *Pultney* v. *Freisheben,* 11 S. E. 337; *Archer* v. *Long,* 16 S. E. 998; *Meinhard* v. *Youngblood,* 41 S. C. 315; *Marshall* v. *Livingston,* 11 Mont. 351; *Bank* v. *Crittenden,* 66 Iowa, 240; *Shaw* v. *Jenks,* 43 N. W. 941; *Wyman* v. *Mathews,* 53 Fed. Rep. 681; *Lee* v. *Henneck,* 52 Ohio St. 180; *Bank* v. *Ellison,* 75 Fed. Rep. 354; *Bank* v. *Gilmer,* 23 S. E. 333; *Ordway* v. *White,* 80 Ala. 244; *Rochester* v. *Armour,* 92 Ala. 432; *Mack* v. *Prince,* 21 S. E. 1012. See also *Daniel* v. *Solomon,* 11 App. D. C. 163.

2. The jurisdiction of the court of equity of this case is supported by two general principles: (1) That an adequate remedy at law does not exist. *Oelrichs* v. *Spain,* 15 Wall. 211. (2) The defendant, Strasburger, having in effect made an assignment and violated the provisions of the law prohibiting preferences in such an assignment, has created

a trust in favor of all his creditors. The disposition of the property involved is a subject within the jurisdiction of a court of equity. *Case* v. *Beauregard*, 101 U. S. 688; *Talley* v. *Curtain*, 54 Fed. 43; *Cates* v. *Allen*, 149 U. S. 451; *Richardson* v. *Penicks*, 1 App. D. C. 267; *Hess* v. *Horton*, 2 App. D. C. 81; *Mehler* v. *Cornwell*, 3 App. D. C. 98; *Cissell* v. *Johnston*, 4 App. D. C. 335; *Bank* v. *Ellison*, 75 Fed. 354; *Spellman* v. *Friedman*, 130 N. Y. 425; *Meinhard* v. *Youngblood*, 37 S. C. 237.

Mr. Justice SHEPARD delivered the opinion of the Court:

1. In the view that we have taken of the question upon which this case must turn, it is unnecessary to review the evidence introduced by the respective parties. On the one hand, it is sufficient to say that the appellants have been decreed to be *bona fide* creditors of Strasburger to the extent of the judgments rendered in their favor respectively; and there is nothing to show that they entered into any conspiracy to defraud the opposing creditors. On the other hand, it may be conceded that Strasburger was insolvent; that all of his visible assets, worth little more than one-third of the amount of his indebtedness, had been seized by the marshal under executions issued upon the confessed judgments; and that he confessed each of said judgments for the purpose of enabling the appellants to obtain an advantage or preference over all other creditors.

Unless prohibited by statute, an insolvent debtor may lawfully prefer one *bona fide* creditor to others, by way of mortgage, pledge, sale, confession of judgment, or assignment. No principle was more firmly established at common law.

The question, then, to be considered and determined is, whether that right to prefer, as exercised in this case, is within the prohibition of the Act of Congress approved February 24, 1893, and entitled "An act relative to voluntary assignments by debtors for the benefit of creditors, in

the District of Columbia, and to amend section seven hundred and eighty-two of the Revised Statutes of the United States, relating to the District of Columbia."

The three sections of the act that have any bearing on this case read as follows:

"Sec. 1. That in all cases of voluntary assignments hereafter made in the District of Columbia for the benefit of creditor or creditors, the debtor or debtors shall annex to such assignment an inventory, under oath or affirmation, of his, her, their, or its estate, real and personal, according to the best of his, her, their or its knowledge, and also a list of his, her, their or its creditors, their respective residences and places of business, if known, and the amount of their respective demands; but such inventory shall not be conclusive as to the amount of the debtor's estate, but such assignment shall vest in the assignee or assignees the title to any other property except legal exemptions, where legal exemptions are reserved by the deed of assignment, belonging to the debtor or debtors at the time of making the assignment and comprehended within the general terms of the same. The assignee in every such assignment shall be a resident of the District, and every such assignment shall be duly acknowledged and recorded in the land records of the District of Columbia.

"Sec. 2. That every provision in any assignment hereafter made in the District of Columbia providing for the payment of one debt or liability in preference to another shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof.

"Sec. 3. That any creditor of an assignor may proceed in equity to attack the assignment as made to hinder, delay, or defraud the creditors of the assignor, without first reducing his, her, their or its debt or claim against the assignor to judgment at law, and may in such equity proceeding prove that he, she, they or it is or are a creditor or creditors, and as such entitled to relief."

In two cases heretofore decided, we have, in a measure, indicated our view of the operation of this statute. *Cissel* v. *Johnson*, 4 App. D. C. 335, 344; and *Droop* v. *Ridenour*, 11 App. D. C. 224. But in neither case was the proper construction of the second section considered in the light of the facts appearing in this record; nor was it essential to the decision of either.

Treating the question, therefore, as an open one, we have given it the consideration that the interests involved, the general importance of the question, and the weight of the argument on both sides deserves. And notwithstanding our views in respect of the justice and expediency of an express statutory prohibition of preferences made in contemplation of failure and cessation of business, as well also as the apparent condition that the operation of the statute aforesaid will be rendered practically futile by reason of the ease with which debtors, determined to prefer creditors under such circumstances, may avoid coming within its scope, we are, nevertheless, constrained to hold that the terms of the second section of the act do not warrant the raising up of a voluntary assignment by construction of law, in a case where the facts show the plain intention of the debtor not to make a common law assignment at all.

That the section will operate in the case of an attempted or defective assignment, by aiding the intent and annulling unlawful provisions, may be conceded. So, likewise, where, from ascertained facts and contemporaneous or connected transactions, transfers and assignments, the intention to accomplish an assignment for the benefit of creditors, with preferences, may be found in the substance thereof, without regard to the particular form in which it may have been clothed or disguised.

Like statutes have been enacted in many of the States, and their construction has nearly always been that they were not intended to prohibit the preference of a creditor, save in cases of formal assignment, or within the exceptions

above stated. The decisions of the courts showing this construction are collated in the briefs of counsel and need not be recited.

It was asserted on the argument for the appellees that the bill relating to this subject had been prepared and sent for submission to Congress by an eminent lawyer of the District, since deceased, and that the object which he sought to accomplish thereby was the prohibition of preferences under the circumstances that exist in this case. If such was indeed the object, it seems more than strange that it was not plainly expressed.

Its provisions, as enacted into law, are substantially like, if not identical with, the statute of the State of Illinois on the same subject, and it is no doubt true, as claimed by the appellants, that they were copied therefrom.

According, then, to the familiar rule in respect of the adoption, without material change, of the statute of another State, namely, that it must be taken, together with such interpretation as it shall have received from the courts of that State, before its said adoption, our duty would seem to be perfectly clear. Before the adoption by Congress, the Supreme Court of Illinois, in at least four well-considered cases, had declared that the statute did not operate to abolish the common law right to prefer creditors, but only the right to make such preferences as a feature merely of an assignment. "The act," said that court, "regulates the conduct of assigning, not insolvent, debtors." *Farwell* v. *Nilsson*, 133 Ill. 45, 49, 51 (A. D. 1890); *Schroeder* v. *Walsh*, 120 Ill. 403, 412 (A. D. 1887); *Weber* v. *Mick*, 131 Ill. 520, 533 (A. D. 1890); *Young* v. *Clapp*, 147 Ill. 176 (A. D. 1892).

It is contended, however, that the Illinois statute had received an interpretation by the Supreme Court of the United States in *White* v. *Cotzhausen*, 129 U. S. 329, different from that since given by the Supreme Court of Illinois, and that Congress must, consequently, be presumed to have

had that in mind in adopting the statute. In this view we can not concur.

In the case of a local statute, the Supreme Court has always adopted the construction given thereto by the highest court of the State, and that practice was not departed from in *White* v. *Cotzhauzen*. It is quite true that the opinion delivered in that case embodies a most pursuasive argument in support of the contention in this case; but the decision was rendered in deference to what the court understood then to be the doctrine of the Supreme Court of Illinois. This was expressly stated in a subsequent case, where the opposite construction was given to a substantially similar statute of the State of Missouri, in deference to the opinion of the Supreme Court of that State. *Chicago Union Bank* v. *Kansas City Bank*, 136 U. S. 223, 235. See, also, *May* v. *Tenney*, 148 U. S. 65, a case arising under a statute of the State of Colorado.

In addition to the foregoing cases, and before the enactment of the statute by Congress, the Supreme Court of the United States had followed the Supreme Courts of Texas and Iowa, respectively, in a like construction of statutes of those States of the same general character. *Reagan* v. *Aiken*, 138 U. S. 109, 113; *Bock* v. *Perkins*, 139 U. S. 628, 641; *South Branch Lumber Co.* v. *Ott*, 142 U. S. 622, 628.

In arriving at the intention of Congress, we must presume that it was aware of the rule of the common law, and that this statute was in derogation thereof; that it was equally informed in respect of the interpretation that had been given time and again by the Supreme Court of Illinois to the precise language adopted from the statute of that State, as well, also, as that which had generally been given to similar statutes by the highest courts of other States; that these decisions of the State courts had always been regarded by the Supreme Court of the United States as binding in cases arising under their respective statutes; and that the decision in *White* v. *Cotzhausen* (made in pur-

suance of the same settled policy) was not intended to express the independent and uninfluenced opinion of the court, but simply what it then understood to be the doctrine of the Supreme Court of Illinois in respect of the interpretation of the statute of that State.

In consideration of the foregoing premises, we are forced to the conclusion that if Congress had intended to repudiate the construction that the statute had received in the State from which it was adopted, it would have made some corresponding changes in the language used, so as to remove all doubt in respect of its intention.

Instead of making such changes, the statute was adopted with all its details in respect of schedules and inventories to be attached to the assignment, registration, and so forth, as well as with its unnecessary reiteration of the words "assignment" and "deed of assignment." One addition was made, namely, that "the assignee in any such assignment shall be a resident of the District of Columbia."

Great stress had already been laid by the Supreme Court of Illinois upon the use of the word assignment in connection with the prohibition of preferences, instead of apt words evincing an intention of a complete or general prohibition thereof. That court said that the word assignment had a definite and well understood signification, alike in law and in common use, and that there was nothing in the statute tending to show that it was to be given therein a wider or more extended meaning.

Under all the circumstances, we do not feel that we would be justified in going beyond the interpretation that has been given this statute by the Supreme Court of Illinois. To do so would savor too much of judicial legislation.

Another and very important question has been raised in this case, namely, whether the provision of section 3 of the act aforesaid, authorizing creditors to proceed in equity without first having reduced their demands to judgment, is within the power of Congress to enact? It has been decided

that a statute of the State of Mississippi, to the same effect, could not confer jurisdiction in equity upon a court of the United States. *Scott* v. *Neely,* 140 U. S. 106, 110; *Cates* v. *Allen,* 149 U. S. 451, 458. And it would seem that the reasoning by which that conclusion was reached is not without some application to the question of the exercise of a like power by Congress itself. But this question may be passed, as under the conclusion reached in respect of the interpretation of the act it is not now necessary to be decided.

It follows from that conclusion that the decree must be reversed, with costs, and the cause remanded with direction to dismiss the bill, and to make such other orders regarding the fund in the custody of the court as may be proper and not inconsistent with the opinion of this court. It is so ordered.

*Reversed.*