## HAMILTON MICHELSEN GROVES CO. et al. v. PENNEY et al.

### No. 6342.

Circuit Court of Appeals, Fifth Circuit.

May 26, 1932.

Robert J. Boone, of Miami, Fla., for appellants.

Thos. B. Adams, of Jacksonville, Fla., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

SIBLEY, Circuit Judge.

A bill was filed in the District Court of the United States in Florida by two corporations and two individuals, citizens of Florida, in behalf of themselves and all others similarly situated, against Mr. and Mrs. James C. Penney, Charles W. Crosby, and Harold A. Whitten, citizens of New York, to recover judgments in favor of the several complainants against James C. Penney, to set aside a transfer of property in Florida by Mr. and Mrs. Penney to Crosby as being in fraud of creditors, and to set aside a purchase-money mortgage thereon given by Crosby to Penney and by him transferred to Whitten, and to sell and administer the property. None of the defendants could be served in Florida, and service was had by publication under 28 USCA § 118. Mr. and Mrs. Penney moved to quash the service on them upon the ground that the bill did not show a case under 28 USCA § 118, and that James C. Penney was suable for the causes of action claimed only in New York and at law, with a right of jury trial. Crosby and Whitten appeared and moved to dismiss the bill for want of jurisdiction in equity because complainants had no judgment at law or legal or equitable lien on the property concerned, because Penney was not alleged to be insolvent, and because no sufficient facts to show him a debtor to complainants were set forth, and for other reasons. The motion to quash was sustained, and the bill was dismissed on jurisdictional grounds. The complainants appeal.

No assignment of error complains of the quashing of the service on James C. Penney and his wife. No such plain error appears as to require notice without assignment. The bill prayed for money judgments against James C. Penney in large amounts in favor of the several complainants. He could not on service by publication be brought from his home in New York to Florida to be subjected to personal judgments against him. Pennoyer v. Neff, 95 U. S. 715, 24 L. Ed. 565. Whether the bill in respect of its other prayers makes a local suit within the jurisdiction of the court on which Mr. and Mrs. Penney might be brought into court by such service is involved in the judgment dismissing the bill, and to that we pass.

The bill states that Penney during 1930 was a stockholder and director in City National Bank of Miami, Fla., which was in an embarrassed condition, and that he made certain statements verbally and in a published advertisement as to the condition of the bank, and to the effect that he and his associates had backed the bank unreservedly in the past and would continue to do so in the future. Penney was a multimillionaire, and the statements and assurances were made for the purpose of influencing depositors to put and leave their money in the bank, and, acting on them, complainants had deposits in stated amounts in the bank when it closed on December 20, 1930. They not only lost their several deposits, but suffered large damage to their businesses because they could not get their money. The statements and assurances of Penney are alleged to have been false and fraudulent. On January 24, 1931, Penney joined by his wife conveyed by warranty deed eight described lots of land near Miami, together with described personal property connected with the land, to Crosby, who to secure the purchase price gave a mortgage back to Penney for $250,000 upon the lands and one of $46,000 on the personalty, and Penney transferred the mortgages to Whitten, all as

is alleged in pursuance of a plan to hinder and defraud complainants and other creditors which was well known to Crosby and Whitten. Beside the prayers for money judgments against Penney, which must fail with his failure to appear, there are prayers to cancel and set aside all these transfers and revest the property in Penney, or in the alternative that it be decreed that Crosby holds title in trust for the benefit of complainants and others similarly situated; that equitable liens be fixed on the property to pay the damages claimed by each; and that the property be sold to satisfy the same.

It will be noted that Penney is presented not as insolvent but as wealthy. He is not absconding, but residing at his home in New York, where he may be sued in the federal courts. No judgment has been obtained against him to establish the validity of any claim. The claims are not liquidated or admitted by him, but are apparently contested. They are legal, and not equitable, in their nature. They are not founded on the receipt by Penney personally of anything belonging to the complainants for which he should account to them, but rest on a weakly and probably insufficiently alleged contract of guaranty of deposits or are tort liabilities for deceit inappropriate to an account in equity, even were Penney in court as a party. The complainants have no equity in or lien on the property itself. One of them sought, but did not perfect, a foreign attachment against it under a Florida statute. No complainant has the slightest interest in or concern with the property or its title, unless and until he establishes that he is a creditor of Penney. "Unless he has a certain claim upon the property of the debtor, he has no concern with his frauds," said Chancellor Kent in Wiggins v. Armstrong, 2 Johns. Ch. (N. Y.) 144. "The principle that a general creditor cannot assail, as fraudulent against creditors, an assignment or transfer of property made by his debtor until the creditor has first established his debt by the judgment of a court of competent jurisdiction, and has either acquired a lien upon the property, or is in a situation to perfect a lien thereon, and subject it to the payment of his judgment, upon the removal of the obstacle presented by the fraudulent assignment or transfer, is elementary. * * * The existence of judgment, or of judgment and execution, is necessary—First, as adjudicating and definitely establishing the legal demand; and, second, as exhausting the legal remedy." Cates v. Allen, 149 U. S. 457, 13 S. Ct. 883, 884, 977, 37 L. Ed. 804. To the same effect are Scott

v. Neely, 140 U. S. 106, 11 S. Ct. 712, 35 L. Ed. 358; Smith v. Fort Scott, etc., R. R. Co., 99 U. S. 398, 25 L. Ed. 437; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 S. Ct. 127, 37 L. Ed. 1113; White v. Croker (C. C. A.) 13 F.(2d) 321. Where the creditor has a trust in or lien on the property, equity may enforce it without a judgment. Case v. New Orleans & Carrollton R. R., 101 U. S. 688, 25 L. Ed. 1004. Otherwise a judgment is essential. Case v. Beauregard, 99 U. S. 119, 25 L. Ed. 370. A judgment for the debt rendered in another state, the debtor's domicile, although it must under the due faith and credit clause of the Constitution have established the existence and amount of the debt, was held not to show exhaustion of legal remedies so as to authorize equity to act, in National Tube Works v. Ballou, 146 U. S. 517, 13 S. Ct. 165, 36 L. Ed. 1070. But, where the debtor is insolvent, and resides in the other state where judgment was had and cannot be sued and served in the state where the property in contest lies, a judgment in the latter jurisdiction was held not necessary to show an exhaustion of legal remedies in Bank of Commerce & Trusts of Richmond, Va., v. Mc-Arthur (C. C. A.) 256 F. 84. And without a judgment anywhere it was held that an admitted debt would justify a court of equity in acting. Allan v. Moline Plow Co. (C. C. A.) 14 F.(2d) 912. Williams v. Adler-Goldman Commission Co. (C. C. A.) 227 F. 374, is urged as going to the extent of holding that nonresidence and insolvency of the alleged debtor justify a court of equity in setting aside a fraudulent conveyance without the establishment of the debt by a judgment or admission of the debtor. Such a doctrine seems inconsistent with the debtor's right in federal courts to a jury trial where a legal liability is contested, even though by statute a state court of equity may proceed, as is pointed out in Scott v. Neely, and Cates v. Allen, supra. See, also, Atlanta & F. R. R. Co. v. Western R. R. Co. (C. C. A.) 50 F. 790; Davidson-Wesson Co. v. Parlin & Orendorff Co. (C. C. A.) 141 F. 37; White v. Croker (C. C. A.) 13 F.(2d) 321; D. A. Tompkins Co. v. Catawba Mills (C. C.) 82 F. 780. In the case at bar the element of insolvency is lacking. Mere nonresidence of the debtor may be made a ground of foreign attachment with the safeguards which the statutes usually provide, but it is not a sufficient basis for administration in a federal court of equity of the debtor's property whether invalidly transferred or not, at the instance of unsecured and unacknowledged creditors without judgment. If any com-

plainant has a good claim against Penney, it can be sued at law in the district of his residence and there collected. No case is made for this premature appeal to equity in Florida to disturb dispositions of property there before any liability of Penney either in contract or tort has been judicially established. Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 497, 43 S. Ct. 454, 67 L. Ed. 763. The court rightly dismissed the bill, but without prejudice to other proper proceedings.

Judgment affirmed.